[Sac. Nos. 277, 334, 335, 336. In Bank.—August 12, 1898.]

H. WEINREICH, Respondent, v. MARY A. HENSLEY, as Executrix, etc., et al., Appellants.

121 647
131 120
131 671
121 647
132 611
121 647
144 619

ESTATES OF DECEASED PERSONS—HOMESTEAD—DEVOLUTION OF TITLE.—The devolution of title to the homestead premises upon the death of one of the spouses is regulated by section 1474 of the Code of Civil Procedure and section 1265 of the Civil Code; but the former section, as amended, having been enacted ten days later than the latter, is to be deemed the latest expression of the legislative will upon that subject.

ID.—HOMESTEAD UPON SEPARATE ESTATE—NONASSENT OF OWNER—POWER TO LIMIT ESTATE OF HEIRS.—Section 1474 of the Code of Civil Procedure deals merely with the descent of the property from which the homestead was selected; and the provision therein, that a homestead selected from the separate estate of a deceased spouse, without the assent of the owner, descends to the heirs, "subject to the power of the superior court to assign it for a limited period to the family of the decedent," is not to be construed as conferring upon the court any power of limitation of the estate of the heirs. Such power of limitation is found in section 1465 of the same code, by which the court is authorized to select a homestead from the separate estate,

if not selected or assented to by the owner in his lifetime, to cases where there is no common property from which to select it.

ID.—SETTING APART HOMESTEAD FROM SEPARATE ESTATE — DISCRETION — POWER OF COURT.—The court has discretion in determining whether it will set aside a homestead from the separate property of the decedent not selected by him in his lifetime, and what particular separate property it will set aside, and is not required to set aside the property selected by the survivor. It also has discretion in fixing the time during which the separate property set aside shall be held as a homestead. It has no power to select and designate property of a greater value than five thousand dollars.

ID.—CESSATION OF HOMESTEAD — ORDER OF COURT. — A homestead selected from the separate estate of a spouse, without the assent of the owner, ceases to exist upon the death of the owner, and vests in the heirs, free from any limitation upon their estate, unless it is afterward selected and set apart as a homestead by an order of the court.

ID.—MORTGAGES UPON LAPSED HOMESTEAD—PRESENTATION OF CLAIM.—A mortgage executed by the husband and wife upon a homestead selected by the wife from the separate estate of the husband, without his assent, which has ceased to exist upon the death of the husband, may be foreclosed without presenting any claim therefor against the estate of the deceased husband.

ID.—MORTGAGE BY EXECUTRIX—CONSIDERATION — PRIOR MORTGAGES UPON HOMESTEAD.—A mortgage executed by the executrix of the will of a deceased husband by order of the court, upon property exceeding five thousand dollars in value, which the wife had selected as a homestead out of the separate property of the husband without his assent, is not rendered invalid or without consideration, because made in lieu of prior mortgages thereupon executed by the husband and wife, no claim for which was presented against the estate of the deceased husband within the time limited therefor.

MORTGAGE—PAYMENT OF TAXES BY MORTGAGEE—ASSESSMENT BY RECLAMATION DISTRICT.—Taxes upon the mortgaged premises paid by the mortgagee for the purpose of preserving his security, may be added to the mortgage. An assessment by a reclamation district, like any other tax, creates a lien upon the land paramount to the lien of the mortgage, and, when paid by the mortgagee, may be added to the mortgage, under section ·2876 of the Civil Code.

ID.—VALIDITY OF ASSESSMENT—CLOUD UPON TITLE—IMPAIRMENT OF SECURITY. Whether the assessment by the reclamation district was properly made to the owner of the tract, as required by law, or whether its form was such as would have defeated an action for its collection, or would have conferred no title upon a purchaser under foreclosure thereof, is not the test of the right of the mortgagee to recover the amount paid for its discharge; but it is sufficient that the assessment created an apparent cloud upon the title to the mortgaged premises, and to the extent of such cloud impaired the security.

ID.—REQUEST OF MORTGAGOR—REPRESENTATIVE CAPACITY—ESTOPPEL.—A request by the mortgagor, who executed the mortgage in a representative capacity, that the reclamation assessment should be paid by the mortgagee, justified the mortgagee in assuming that the request was made in such representative capacity, in behalf of the estate and for its preservation, rather than as residuary legatee, and the mortgagor, as residuary legatee, is estopped from disputing the right of the mortgagee to make payment under the request.

ID.—CROSS-COMPLAINT BY RECLAMATION DISTRICT—PARTIES.—A cross-complaint by the reclamation district to enforce its assessment as a paramount lien, in an action to foreclose a mortgage executed by an executrix, to which the executrix is not made a party, and to which she appeared individually, does not authorize the court to determine that the estate of the decedent, or any person interested therein, who was not made a party to the cross-complaint, was bound by the assessment.

ID.—ESTOPPEL OF JUDGMENT.—One of two residuary legatees, who was served with the cross-complaint, but took no issue upon its allegations, is precluded from questioning the judgment sustaining the validity of the assessment; and is also estopped from questioning such validity declared by a former judgment in an action to which such a devisee was a party. But the interest of the other residuary legatee is unaffected, if not made a party to the cross-complaint or to the former action.

TAXATION—FORM OF ASSESSMENT—NAMES OF OWNERS—UNKNOWN OWNERS.—An assessment by a reclamation district must be made to the owner, if known, and, if unknown, then to unknown owners; and a failure to comply with this requirement renders the assessment invalid.

ID.—ASSESSMENT BY RECLAMATION DISTRICT TO PERSON NAMED.—An assessment by a reclamation district to a person named, who was one of the residuary legatees under the will of the deceased owner, can only be enforced in an action brought against the person named, and the court cannot render judgment therefor against any other person. In an action for its enforcement against other owners, they may question its validity, as not having been made to them, or to unknown owners, notwithstanding the admission of its validity by the person named.

ID.—MISTAKE IN NAME OF OWNER—CONSTRUCTION OF CODE.—The provision in section 3628 of the Political Code, that "no mistake in the name of the owner or supposed owner of real property shall render the assessment invalid," refers only to the assessments therein provided for, and does not apply to an assessment made by a reclamation district.

ATTACHMENT LIEN—DOCKETING OF JUDGMENT—MERGER.—The lien of an attachment on real estate is not merged in the judgment until the latter becomes a lien; and if the judgment has not been docketed, the lien of the attachment still remains upon the land.

ID.—ATTACHMENT OF INTEREST IN LAPSED HOMESTEAD.—The interest of the widow as heir or devisee in a homestead which has ceased to ex-

ist upon the separate property of the deceased husband is subject to attachment by her creditors.

ID.—PRIORITY OF LIENS—RECLAMATION ASSESSMENT.—Attachment liens created upon the interest of the widow in lands of the deceased husband, before the rendering of a judgment against her affirming the validity of a reclamation assessment which has no validity as against any other person, are superior to that determined by that judgment, and are entitled to priority of payment over the reclamation assessment out of her distributive share.

APPEALS from a judgment of the Superior Court of Sacramento County. A. P. Catlin, Judge.

The facts are stated in the opinion of the court.

Stearns & Elliott, for Mary A. Hensley, as Executrix, and personally, and Marion A. Turner, Appellants.

L. T. Hatfield, for Mebius and Drescher, Appellants.

Albert M. Johnson, Hiram W. Johnson, and A. P. Catlin, for H. Weinreich, Respondent.

W. A. Gett, Jr., for Reclamation District No. 556, Respondent.

Driver & Sims, for John Elliott, Respondent.

HARRISON, J.—The plaintiff seeks by this action the foreclosure of a mortgage upon two hundred and twenty-nine acres of land belonging to the estate of Calvin P. Hensley, deceased, executed to him by the defendant Mary A. Hensley, as executrix of the last will and testament of said decedent, under an order of the superior court therefor, made by virtue of the provisions of sections 1577 and 1578 of the Code of Civil Procedure. The tract of land was the separate property of the deceased, and he and the said Mary A. Hensley were husband and wife, and resided thereon with their family up to the time of his death, and since his death the family has continued to reside upon the land. In the year 1881, and again in 1884, Mrs. Hensley filed and caused to be recorded a valid declaration of homestead upon the premises, but her husband did not join in either declaration, and never made any declaration of homestead. June 2, 1888, Mr. and Mrs. Hensley made their promissory note to the plaintiff herein for the sum of $6,000, and executed to him a

mortgage upon said tract of land as security for its payment, and on August 22, 1888, they made to him another note for $2,000, which they secured by another mortgage upon the same land. Mr. Hensley died July 26, 1889, leaving a last will and testament, which was admitted to probate, and letters testamentary thereon issued to his widow, whom he had named as executrix. By his will he gave certain pecuniary legacies, and made other dispositions of property, and devised the residue of his estate to his wife and son, Calvin P. Hensley, Jr. After letters testamentary had been issued upon his will, the executrix gave due notice to the creditors of the deceased for presentation and allowance of their claims, and the time for such presentation expired July 31, 1890. In September, 1889, she also filed an inventory of the property belonging to the estate, in which the land described in the mortgage herein was included, and was appraised at the sum of $38,930. The plaintiff made no presentation to the executrix of his claim against the estate of the deceased upon the aforesaid promissory notes and mortgages, but the executrix continued to pay the interest thereon until April 26, 1893. On that day she filed a petition in the superior court for an order authorizing her to execute a mortgage upon the above land for the purpose of meeting the notes and mortgages held by the plaintiff, and after setting forth the fact of their execution, and that they had not been paid, stated "that it is necessary to mortgage the foregoing described real estate in order to raise funds to pay off the foregoing named mortgages, because if they are not paid the said Weinreich will foreclose the same at a great cost and expense and damage of and to said estate," and asked for an order authorizing her, as executrix, to execute her promissory note "to the said Weinreich, or to some other person, for the sum of $8,000, together with a mortgage on said real estate to secure the payment of the said promissory note for the period of two years, or more or less, as to the court may seem proper." Upon filing this petition the court fixed a day for its hearing, and on the day fixed, after proof that notice thereof had been given, made an order authorizing the executrix to execute her promissory note for $8,000, payable in two years, and to secure its payment by a mortgage upon the aforesaid land. The order makes no reference to the mortgages then

held by the plaintiff herein, but recites that it duly appeared to the court that it would be for the best advantage and interest of the said estate, and of all persons interested therein, that the executrix should execute her note for the sum of $8,000, and borrow said sum of money thereon, and mortgage the real estate described in the petition to secure its payment. Thereupon the executrix executed to the plaintiff herein the mortgage upon which the present action was brought, and he surrendered and satisfied the mortgages then held by him.

June 2, 1892, Mrs. Hensley mortgaged the tract of land to Mebius and Drescher, defendants herein, to secure her promissory note to them for the sum of $919. This mortgage is set up by them in a cross-complaint herein, in which they seek its foreclosure, and the court finds that there was unpaid the sum of $832.92.

August 20, 1894, the defendant John Elliott commenced an action against Mrs. Hensley upon a money demand, in which action he caused her interest in the land to be attached, and on October 8, 1894, judgment was entered therein against her for the sum of $782.30. This judgment Elliott prayed might be paid to him out of the proceeds coming to Mrs. Hensley from the sale of the premises, after satisfying the claim of the plaintiff.

The superior court rendered its judgment directing a sale of the mortgaged premises, and that after paying the claim of the Reclamation District No. 556, hereinafter considered, the proceeds of the sale be applied to the payment of the plaintiff's claim upon the promissory note set forth in the complaint, and for certain moneys paid by him to the reclamation district upon an assessment levied upon the land, and that after making such payments any surplus proceeds of the sale be paid to the executrix of the will of Calvin P. Hensley, to be held by her subject to administration, and that after the payment and discharge of all incidents of administration, the distributive share of Mary A. Hensley in such surplus proceeds shall be subject to the payment, first, of the claim of Mebius and Drescher, and then to the claim of John Elliott. From this judgment appeals have been taken by Mary A. Hensley individually, and also as executrix, Marion A. Turner, a legatee under the will of Calvin P. Hensley,

and Mebius and Drescher. The appeals are presented in four separate records, but as they involve the same questions they have been considered together.

1. The validity of the mortgage sued upon is contested upon the ground that the land secured by the mortgages of 1888 was a homestead, and that under the provisions of section 1475 of the Code of Civil Procedure, by reason of the failure of the plaintiff to present a claim against the estate upon the notes which they were given to secure, he lost the right to enforce either the notes or the mortgages, and that therefore there was no consideration for the note and mortgage executed under the order of the court. (Citing *Camp v. Grider,* 62 Cal. 20.) One of the controlling questions in the case, therefore, is the effect of the death of Hensley upon the homestead which his wife had selected out of his separate estate without his assent. What was the status of the property after his death? Did the homestead cease with his death, or was the land still impressed with the characteristics of a homestead?

The devolution of the title to the homestead premises in case of the death of one of the spouses is provided for in section 1265 of the Civil Code, and also in section 1474 of the Code of Civil Procedure. The latter section was amended ten days later than the section of the Civil Code, and is to be regarded as the latest expression of the legislative will. By this section the legislature has declared: "If the homestead was selected from the separate property of either the husband or the wife, without his or her consent, it vests, on the death of the person from whose property it was selected, in his or her heirs, subject to the power of the superior court to assign it for a limited period to the family of the decedent." The power thus to limit the estate of the heirs is not given by this section, but is merely referred to as the source of the limitation which may be placed upon their estate. This section purports to deal merely with the descent of the property from which the homestead was selected, but the power of the court to assign the homestead, and upon whose exercise a limitation upon the estate of the heirs is created, is given in section 1465 of the Code of Civil Procedure, and the provisions of this section are to be read in connection with the provisions of section 1474. The court is there directed to set

aside the homestead that was selected in the lifetime of the decedent, provided such homestead was selected from the common property or from the separate property of the person selecting or joining in the selection of the same, and the section then declares: "If none has been selected, designated, and recorded, or in case the homestead was selected by the survivor out of the separate property of the decedent, the decedent not having joined therein, the court must select, designate, and set apart and cause to be recorded a homestead for the use of the surviving husband or wife and the minor children; or, if there be no surviving husband or wife, then for the use of the minor children, in the manner provided in article two of this chapter, out of the common property; or, if there be no common property, then out of the real estate belonging to the decedent."

The power thus given to the court to set apart a homestead that has been selected from the separate estate of the decedent is the same as is its power to set apart a homestead when none has been selected in the lifetime of the decedent, and must be exercised in the same manner and under the same limitations and conditions. The provision in section 1474 making the estate of the heirs subject to the exercise by the court of its power to assign the homestead to the family for a limited period does not confer upon the court the power to assign the homestead taken from the separate property of the decedent, unless by the conditions of section 1465 the separate estate may be so set apart. That section does not direct the court to set apart the homestead which had been selected by the survivor out of the separate property of the deceased spouse, but declares that in such case the court must "select," designate, and set apart a homestead, and limits the property out of which it is to be selected to the common property, if there be any. It is only in the case where there is no common property that it may select, designate, and set apart a homestead out of the separate estate of the decedent. (*Lord v. Lord*, 65 Cal. 84.) It is very evident that, if there be any common property, the homestead which may have been selected by the survivor from the separate property of the decedent, without his assent, would cease to be such upon his death; but the effect of his death upon the homestead selected from his separate estate, without his assent, is the same whether there be common property or not.

. The provision in section 1468 of the Code of Civil Procedure, declaring what shall be the ownership "when property is set apart to the use of the family in accordance with the provisions of this chapter," implies that until it is so set apart the property belongs to the estate of the decedent; and the subsequent provision in the same section, "if the property set apart be a homestead selected from the separate property of the deceased, the court can only set it apart for a limited period to be designated . in the order, and the title vests in the heirs of the deceased, subject to such order," clearly indicates that the court must make an order designating the limited period for which the homestead is set apart, and that until such order is made there is no homestead, and that the property selected as a homestead out of the separate estate of the deceased in his lifetime, without his assent, ceases upon his death to be a homestead, and vests in his heirs, free from any such limitation, unless it is afterward selected and set apart as a homestead by an order of the court.

The court has a discretion to exercise in determining whether it will set aside a homestead from the separate property of the decedent, as well as the particular property which it will set aside, and also in determining the time during which it shall be held as a homestead. It is not required to set aside the property which was selected by the survivor, and is limited to selecting and designating property which is of no greater value than $5,000. "The court is not bound by the wishes of the applicant, but should exercise its own discretion and good judgment." (*In re Schmidt,* 94 Cal. 334.) "The right to have it assigned for a limited period is not absolute, but rests in the sound discretion of the court to be exercised in view of all the facts appearing before it." (*In re Lamb,* 95 Cal. 399.) In the present case, the land selected by the wife was appraised at $38,930, and was alleged by her, at the time the application was made for leave to execute the present mortgage, to be of the value of $31,000. As a homestead of only $5,000 in value could be set apart, and as there was no particular portion of the tract subject to the claim until it had been set apart, none of the land was impressed with the characteristics of a homestead.

It must, therefore, be held that upon the death of Calvin P. Hensley the property ceased to have the incidents of a home-

stead, and that the property described in the complaint was sub-ject to foreclosure under the provisions of section 1500 of the Code of Civil Procedure, without the presentation of a claim to the executrix. There was, therefore, at the date of the order authorizing the executrix to execute the note and mortgage sued on, and also at the date of their execution, a valid claim of lien in behalf of the plaintiff upon the property included in the mort-gage, and the surrender and cancellation by him of the notes and mortgages of 1888, which was the basis of this claim, was a suf-ficient consideration for the execution to him of this note and mortgage.

2. The lands included in the mortgage are within the limits of Reclamation District No. 556, and in May, 1894, the district levied an assessment upon all the lands within its boundaries. The amount of the assessment imposed upon these lands was $7,296.54, and was assessed to "Mrs. M. A. Hensley." After the assessment was levied the district made a written demand upon her for its payment, and at her request the plaintiff paid portions thereof as they became due and payable, amounting to $3,283.46. These amounts and their payment are set forth in the complaint and claimed by the plaintiff to be secured by the mortgage, and this claim was sustained by the court. The re-mainder of the assessment—$4,013.15—was not paid.

Section 2876 of the Civil Code declares: "Where the holder of a special lien is compelled to satisfy a prior lien for his own protection, he may enforce payment of the amount so paid by him as a part of the claim for which his own lien exists." An assessment by a reclamation district, like any other tax levied under the sovereign authority of the state, creates a lien upon the land assessed paramount to the lien of the mortgage. Taxes upon the mortgaged premises are a charge upon the estate, and, if paid by the mortgagee for the purpose of preserving his se-curity, may be added to the mortgage. (*Robinson v. Ryan*, 25 N. Y. 327; Jones on Mortgages, sec. 358.) It is urged by the ap-pellants, however, that the statute under which the assessment was levied required it to be made to the "owner" of the tract (Pol. Code, sec. 3461), and that, as Mrs. Hensley and Calvin P. Hensley, Jr., were the residuary devisees of the estate, she was not its "owner," and the assessment to her was such a failure

to comply with this requirement of the statute as to render it illegal, and the plaintiff was, therefore, not required to pay it for the protection of his security. Whether the form of the assessment was such as would have defeated an action for its collection, or would have conferred no title upon the purchaser at a sale under a judgment for its foreclosure, is not the test of the plaintiff's right to recover the amount paid for its discharge. The assessment created at least an apparent cloud upon the title to the mortgaged premises, and to the extent of such cloud impaired the sufficiency of the security. Mrs. Hensley was not only one of the residuary legatees, but she was also the executrix of the testator's will, and was charged with the care and preservation of the estate during its administration. If when the district made its demand upon her for the payment of the assessment she had paid it out of the funds of the estate, the court sitting in probate would have been justified in allowing such payment in the settlement of her accounts. She was not required to contest its validity for fear she might incur the risk of having the payment disallowed; and its allowance by the court upon the settlement of her accounts would have been binding upon the heirs and devisees of the testator. In *Windett v. Insurance Co.,* 144 U. S. 581, it was held that a mortgage should be allowed for the moneys paid in purchasing some tax titles which were claimed by the defendant to be void, the court saying: "The mortgagee was not bound to take the risk of contesting the tax titles, and the sums paid to extinguish those titles were reasonable expenses, chargeable to the mortgagor by the terms of the mortgage." The mortgage to the plaintiff was made by Mrs. Hensley in her representative capacity alone, and when she requested him to pay this assessment he was justified in assuming that it was a request from her in this representative capacity in behalf of the estate, and for its preservation, rather than from her as the residuary legatee of a portion of the estate. His payment at her request must be considered with the same effect as if it had been made by her in her representative capacity. As one of the residuary legatees, Mrs. Hensley is estopped from disputing the plaintiff's right to make the payment under this request, and it may be noted, too, that the other residuary legatee makes no resistance to the plaintiff's right to be reimbursed therefor.

3. The reclamation district was made a defendant herein, and in its answer set forth its claim of lien by virtue of the said assessment, alleging that it is paramount to that of the plaintiff, and also filed a cross-complaint alleging its corporate existence and boundaries; that it had levied an assessment upon the lands within these boundaries, $7,296.64 having been assessed against the lands described in the complaint, of which amount $4,015.69 remained unpaid; that the defendant Mary A. Hensley is, and was at the date of the assessment, the owner of said lands, and asked judgment that said amount is a valid lien upon the lands, paramount to that of the plaintiff, and that it be paid out of the proceeds of any sale thereof. The plaintiff demurred to this cross-complaint as constituting no defense to his cause of action, but no disposition was made of the demurrer, nor did the plaintiff answer the cross-complaint. Mary A. Hensley, in her individual capacity, answered the cross-complaint, and to this answer the reclamation district interposed a demurrer, which was sustained, and no further pleading was made on her behalf. The cross-complaint did not name any particular defendants thereto, and was not served upon any of the defendants in the action other than Mrs. Hensley. The court rendered judgment in its favor for the amount of this claim, directing it to be paid from the proceeds of the sale as a first charge upon the land.

As Mrs. Hensley made no issue at the trial herein upon the allegations in the cross-complaint, she is precluded from questioning the judgment sustaining the validity of the assessment. It appears also from the bill of exceptions that the district had brought an action (Stats. 1893, p. 208) in the superior court for the purpose of determining the validity of this assessment, wherein Mrs. Hensley was a defendant, and that the court rendered its judgment therein that the assessment was legal and valid. Mrs. Hensley was not, however, the sole owner of the land, and while she is estopped by these judgments from questioning the right of the district to enforce the lien of the assessment against her interest in the land, or her personal liability for the assessment, if any exists, they are not available against the interests of any other person in the land assessed. Calvin P. Hensley, Jr., as one of the residuary legatees, has the same interest as herself in the land, and, while the estate is in the

course of administration, the personal representative of the testator is entitled to be heard in any manner affecting the rights or interest of the estate in the land. Unless such personal representative is made a party to the proceeding, neither the estate nor any person claiming as legatee or devisee of the decedent, who is not himself a party, can be bound by the judgment therein. The court, therefore, was not authorized to determine as against these defendants that the assessment was a valid lien upon their interest in the land.

Section 3461 of the Political Code requires the assessment list to contain "the names of the owners of each tract, if known; and, if unknown, that fact." Under a long line of decisions in this state a failure to comply with this requirement renders the assessment invalid. (*Kelsey v. Abbott*, 13 Cal. 609; *People v. Sneath*, 28 Cal. 612; *Smith v. Davis*, 30 Cal. 536; *Taylor v. Donner*, 31 Cal. 480; *Emeric v. Alvarado*, 90 Cal. 465; *Lake Co. v. Sulphur Bank etc. Co.*, 66 Cal. 17.) In the case last cited the court said: "Tax proceedings are *in invitum*, and to be valid must be in strict accordance with the statute. Without an assessment all subsequent proceedings are nullities; and in making the assessment the provisions of the statute under which it is to be made must be observed with particularity."

Section 3466 of the Political Code authorizes the board of trustees to commence an action for the collection of the assessment and the enforcement of the lien on the land assessed "against the person to whom the same is assessed, and, if assessed to 'unknown' owners, then against the real owners." As the assessment in the present case was made to Mrs. M. A. Hensley, the latter clause in the above portion of the section is inapplicable, and an action for its enforcement must be brought against her alone, and the court cannot render judgment therefor against any other person. The statute does not authorize the assessment to be enforced against the real owners unless they are named in the assessment, or the assessment is made to "unknown" owners, and in an action for its enforcement against them they may question its validity, notwithstanding the admission of its validity by the person against whom the assessment is made. In *Blattner v. Davis*, 32 Cal. 328, the assessment was made to Schaffer, and in a suit for its enforcement brought against Davis

and Schaffer, under the allegation that both were owners of the lot assessed, judgment was rendered against Davis alone, and the amount of the assessment decreed to be a lien against the entire lot. In reversing this judgment the court said: "If the property was properly assessed as belonging to Schaffer, there is no apparent reason for charging the appellant with the amount assessed. If the property belonged to the appellant and Schaffer, as tenants in common, it should have been assessed to them jointly as owners. . . . . The name of the appellant does not appear in the assessment as the owner or one of the owners of the lot assessed, nor does it appear that he was unknown to the superintendent of streets, and that his interest in the property was duly assessed, as required in such cases. The complaint states that the lot in question was assessed to Schaffer, which means that it was assessed to him as the owner. This statement, which is found to be true by the court, shows that the assessment did not affect the appellant, and consequently that the proceedings had, and upon which the plaintiff relies for compensation under his contract with the superintendent, were of no binding force upon the appellant, and created no legal obligation on his part to pay the sum for which judgment passed against him."

The reason for this requirement is obvious. The assessment is a charge against the entire property, and under section 3466 the lien is to be enforced "against each tract for the amount assessed against the same." If the person assessed is not the entire owner, his interest in the land would be made to pay the entire assessment, while, if the entire land is made liable for the assessment, those who are not named in the assessment list would be deprived of their interest in the property without an opportunity of being heard in its defense. It follows that, as the assessment in the present case was made to "Mrs. M. A. Hensley," the district was not authorized to institute an action for its enforcement against any other person interested in the land, either as owner or otherwise, and that, although she is estopped by the judgment against her from questioning its validity, its illegality is available to the other defendants as a defense herein. The provision in section 3628 of the Political Code, that "no mistake in the name of the owner or supposed owner of real property shall render the assessment thereof invalid," refers to the

assessment provided for in that section, and has no application to an assessment by a reclamation district. (See *Lake Co. v. Sulphur Bank etc. Co., supra; Gwynn v. Dierssen,* 101 Cal. 563.)

4.  It is objected by Mrs. Hensley that the judgment in favor of Elliott did not constitute a lien upon the premises, for the reason that it does not appear that it was ever docketed. The lien of the attachment would not, however, be merged in the judgment until the latter became a lien, and, if the judgment has not been docketed so as to become a lien, the lien of the attachment still remains upon the land. (*Bagley v. Ward,* 37 Cal. 121; *Riley v. Nance,* 97 Cal. 203.) As we have seen that upon the death of Mr. Hensley the land ceased to be a homestead, the interest of Mrs. Hensley therein became subject to an attachment by her creditors. Each of these liens upon the interest of Mrs. Hensley in the lands was created before the judgment was rendered against her affirming the validity of the assessment, and, as the holders of these liens were neither of them a party to that proceeding, their liens are superior to that of the judgment, and are entitled to priority of satisfaction.

From the foregoing considerations it follows that out of the proceeds of the sale of the land described in the complaint, the plaintiff is entitled to be paid, as a first charge thereon, the amount of his claim, as found by the court, including the amount due upon the promissory note, the amount paid by him for the assessment levied by the reclamation district, and his attorney's fees and costs, and that any surplus proceeds there may be after making these payments should be paid to the executrix of the last will of C. P. Hensley, deceased, to be held by her subject to the administration of said estate, and that at the close of said administration Mebius and Drescher, John Elliott, and Reclamation District No. 556 should receive out of the distributive share coming to Mary A. Hensley the respective amounts found by the court in their favor, and in this order of priority.

The cause is, therefore, remanded to the superior court, with directions to modify its judgment for the disposition of the proceeds of the sale after paying the claim of the plaintiff in accordance with the foregoing opinion. The costs of the appeals of Mary A. Hensley, as executrix, and Marion A. Turner, to be taxed against Reclamation District No. 556; the costs of the ap-

peals by Mary A. Hensley and Mebius and Drescher to be borne by them respectively.

McFarland, J., Van Fleet, J., Garoutte, J., Temple, J., and Henshaw, J., concurred.