GONZÁLEZ ET AL., PLAINTIFFS AND APPELLANTS, *v.* PIRAZZI ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of Ponce in an Action to Recover a Tenancy in Common.

No. 1300.—Decided January 26, 1916.

TAXATION—VALUATION OF PROPERTY—ASSESSMENT.—Whenever a tax is levied upon the basis of a valuation of property the assessment is an indispensable prerequisite without which all subsequent proceedings are null and void, and in making the assessment the provisions of the statute under which it is to be made must be observed.

ID.—ASSESSMENT.—According to sections 298, 309 and 315 of the Political Code as in force on March 5, 1901, the original assessment of a property for purposes of taxation, made and notified to one of the owners only, is null and void.

ID.—AGENT—POSSESSION—PERSONAL PROPERTY.—Section 293 of the Political Code applies to agents and to those who hold possession in the name of others, but not to one of several owners in common. The said section refers only to personal property.

ID.—NOTIFICATION TO OWNER.—When there are several owners of a property each of them is entitled to notice of some kind, it being the theory of section 336 of the Political Code that notice must be given to the owners, to their family, if the latter are on the place, or be put into the hand of witnesses when the owners are not to be found.

OWNERSHIP IN COMMON—BAD FAITH—FRUITS, RENTS AND PROFITS—DAMAGES.—When in a suit for the recovery or acknowledgment of interests in common it is not shown that the defendants possessed in bad faith, a claim for fruits, rents, profits or damages will not be sustained.

The facts are stated in the opinion.

*Mr. Alberto S. Poventud* for the appellant.

*Messrs. José I. Fernández Segarra* and *José F. Fernández Corona* for the appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

The complainants, in union with Natalio González, named

as defendant, are the heirs of their grandfather, Federico González Vázquez, who owned the property the object of this suit. The complainants had been such owners since 1897.

The complaint substantially sets up that the property was recorded in the Registry of Property of Ponce in the name of the said six owners in common on October 18, 1902; that the Treasurer of Porto Rico, through his authorized agents, assessed the property solely in the name of Natalio González and afterwards, or in September, 1904, attached the whole of said property as belonging to Natalio González alone, who was the only one of the owners notified of the proceeding, the property being sold in his name alone for the recovery of $15.95; that on October 7, 1904, the said property was adjudicated at public auction for the sum of $18 to Jaime Vives y Font, who recorded his acquisition in 1905; that the Treasurer gave no notice to the complainants, neither of the assessments nor of the sale, although they were residents of the island during all the time of the proceedings; that Jaime Vives y Font sold the whole of said property to defendant Nereo Pirazzi by deed also duly recorded, the last-named selling a part of the land to the co-defendant Zoila Lugo, the present possessors being the two last-named persons; that the defendants appropriated the rents and profits, amounting to $1,440, and that the complainants suffered damages. They further set up that they are the owners of over one-half of the property and ask that the defendants in possession may be made to put at the disposition of the complainants the part that belongs to the latter, and they also ask, in so far as it affects the complainants, that the assessment, attachment and sale be declared null and void; and they ask other nullities, including the record of the whole of the land in the name of the various purchasers.

Thus it will be seen that the theory of the complaint is a suit claiming or relating to an acknowledgment of a tenancy in common. The complainants do not attack the tax sale so far as it purports to convey the interest of Natalio

González, and we expressly refrain from considering the general validity of the tax proceeding but only consider the specific questions raised by the complainants, namely: First, whether the property was duly assessed so as to divest the complainants of their title; second, whether there was any due notice of the assessment to them; third, whether there was a sufficient notice to the said complainants of the attachment and sale.

Natalio González, the above-mentioned defendant, was the only one of the owners who lived on the property. It is an undisputed fact in the case, developed at the trial, that the original and subsequent assessments were made in his name and that against him alone all the subsequent proceedings for and notice and attachment and sale of the property were directed. In the fiscal year of 1902–03 the property was reassessed in the name of Natalio González.

With respect to the assessment of property for taxation, some of the principles are set forth in Black on Tax Titles, as follows:

"Now whenever the tax is levied upon the basis of a valuation of property, the assessment is an indispensable prerequisite. It is the first step in the proceedings against individual subjects of taxation. Upon it all the future proceedings depend. Without a proper assessment, no subsequent step can have any color of validity. And—which more especially concerns us here—if the assessment is illegal or insufficient, or in any substantial matter fails to comply with the law, a sale of real property for non-payment of the tax so assessed is nugatory and void. 'Tax proceedings are in invitum, and, to be valid, must be in strict accordance with the statute. Without an assessment, all subsequent proceedings are nullities. And in making the assessment, the provisions of the statute under which it is to be made must be observed with particularity.' * * *

"The general principle undoubtedly is, that the assessment is so important and vital a step in the tax proceedings, that the omission of any requisite in the due conduct of it, or any substantial variance from the statutory provisions, cannot be regarded as a mere irregularity or informality. In other words, the various steps prescribed by law in this regard must be considered, for the most part, as man-

datory and imperative, and must be observed with scrupulous exactness. The legal and orderly levying of the assessment is one of the most important safeguards devised for the protection of the citizen, and it is in this connection that many of the errors which have defaced tax proceedings and invalidated tax titles have been found.

"Yet is is equally true that mere irregularities in making the assessment, such as in their nature cannot be injurious, will be overlooked. And in considering the various statutes regulating the assessment of taxes, and the measures preliminary thereto, it is not always easy to distinguish between those which are conditions precedent to the legality and validity of the tax, and those which are merely directory and do not constitute conditions. 'One rule,' says the court in Massachusetts, 'is very plain and well settled; that all those measures which are intended for the security of the citizen, for insuring an equality of taxation, and to enable every one to know, with reasonable certainty, for what polls and for what real and personal estate he is taxed, and for what all those who are liable with him are taxed, are conditions precedent, and if they are not observed he is not legally taxed, and he may resist it in any of the modes authorized by law for contesting the validity of the tax. But many regulations are made by statute, designed for the information of assessors and officers, and intended to promote method, system, and uniformity in the modes of proceeding, the compliance or non-compliance with which does in no respect affect the rights of tax paying citizens. These may be considered directory; officers may be liable to legal animadversion, perhaps to punishment, for not observing them, but yet their observance is not a condition precedent to the validity of the tax.' Where the law provides that mortgaged property, less the value of the mortgage, shall be assessed to the property owner, and the value of the mortgage to the holder of it, and that these respective values shall be entered in the assessment book 'in separate columns under appropriate heads,' it is held that where the assessor enters the value of the mortgaged property in the appropriate column, but fails to enter the value of the mortgage in the property owner's assessment, and to deduct it from the value of the property, the assessment and all subsequent proceedings thereunder are void, and a sale for the non-payment of the tax so assessed will not divest the property owner's title."

The appellants first maintain that the original assessment was null and void inasmuch as it was made in the name of one of the owners alone and that the assessor could easily

have discovered on inquiry who the other owners were. The duty was plain by virtue of sections 298, 309 and 315 of the Political Code, in force when the property was first assessed on March 5, 1901.. The collector was bound to make inquiries. At the time of the first assessment, and likewise at the second, the property was not recorded and the appellees lay stress on this point. Their principal reliance, however, was based on section 293 of the Political Code, in force at the time of the assessments, attachment and sale, which provided that

"Commission merchants and all persons dealing and trading on commission, assignees authorized to sell, and persons having in their possession property belonging to another, subject to taxation in the assessment district where said property is found, shall, for purposes of taxation be deemed the owners of the property in their possession."

We think that section 293, by its terms, applies to agents, those who hold possession in the name of others, and not to one of several owners in common. There was no evidence that Natalio González held as agent for the other owners. or in any other way except as a co-owner. He testified that he did not. Nor do we understand that there is any relation of agency in the ordinary meaning of that word. Furthermore, we think that a more careful inspection of section 293, along with its position in the code, will show that this section refers alone to personal property. Section 292 refers to personal property and so do sections 294, 295 and 296. Again, the words "commission merchants," as generally understood, only apply to those handling personal property. A reading of other statutes and textbooks on taxation will also disclose that this is a provision of law generally made with regard to personal property. Furthermore, we think that if the Legislature had intended to include in this section a provision with regard to those who held real property in the name of others, it would have used apter language.

Section 309, in force at the time the assessment in this case was levied, provides as follows:

"Tax-payers shall be promptly notified by the Treasurer of all original assessments or reassessments made on their properties by the serving of a written notice on the owner of the property, or in case of his absence, on the person in charge of the property * * *."

Bearing the general principles of tax enforcement in mind, it must be evident that it was the duty of the tax collector in this case to notify the owner of the property. The only justification for notifying the person in charge of the property would exist when the owner of the property was clearly absent. We think the record in this case shows that the tax purported to be against the owner and, hence, the owners ought to have been notified.

The property was attached and sold without any notice whatever to the appellants. In this regard the appellees admit that a tax law must be strictly construed, but they maintain that the tax law of Porto Rico, in this case, was enforced. The court below relied on sections 293 and 298 of the Political Code. Section 293 has been set forth and discussed heretofore and section 298 seems to have no particular application. Section 298, as originally passed, contains nothing about notice to the taxpayer. The appellees, however, place some reliance on section 336 of the Political Code, the pertinent part of which is as follows:

"Immediately upon the receipt of the written consent of the Treasurer, the collector, deputy-collector, or agent, shall make out a written notice of attachment of the personal property of the delinquent tax-payer, which notice shall contain the amount of the delinquent taxes and the interest provided for by section 330. The said attachment shall be enforcible as soon as notice thereof shall have been served by leaving a copy thereof with the debtor himself or any member of his family or attendants of legal age, and record of such service shall be noted down by the collector, deputy-collector, or agent, for subsequent action. When the collector, deputy-collector, or agent, fails to find any member of said debtor's family or attendants, he shall call in two neighbors as witnesses of the service of the notice of attachment, and he shall leave said notice in the hands of said witnesses, or, if no witnesses be found willing to receive the notice, the same shall be posted or attached to the goods, chattels

or other property of the said debtor, whereupon the notice shall be considered as having been served upon the debtor. If at the expiration of ten days after the service of such notice the said taxes and extra charges provided for by section 330 ₁shall not have been paid, the collector, deputy-collector, or agent, shall proceed to execute the attachment and sell the personal property of said debtor, or so much of the same as may be strictly necessary to pay the said taxes, penalties and costs.''

That section continually refers to the ''debtor.'' Section 392 of the Political Code says that the singular number includes the plural. At the time of the attachment and sale the true record owners of the property were not only Natalio González but the appellants as well, and they were all entitled to notice by the provisions of the Political Code as of the general law. See *Menéndez* v. *The Registrar of Property*, 13 P. R. R. 173; 37 Cyc. 1325, note 15; Cooley on Taxation (3rd ed.), page 733; *Weinreich* v. *Hensley*, 121 Cal. 647, 659; *Turpin* v. *Lemon*, 187 U. S. 57. In this case the owners were not notified, but only one of them. It makes no difference that section 336, *supra*, says that notice may be made upon members of the family. The family to which that section refers presupposes the family living on the place. A cousin is not a member of the family of the cousins, co-owners who are living away. We think that this reasoning flows from section 336 itself and from other sections of the Political Code. The correct theory is that notice must be given to the owners, to their families if the latter are on the place, or be put into the hands of witnesses when all the owners are not to be found. The court has nothing to do with the inconveniences that our construction of the statute would entail when there are several owners. The fact remains that each owner is entitled to notice of some kind and in this case the appellants were not notified at all. The fact further appears that at the time one of the assessments was made and at the time of the sale, the property was on record in the registry of property in the name of the appellants; hence, it is evident that the collector did not make due inquiry.

We therefore reach the conclusion that in selling the property the ownership-in-common of which is claimed by complainants from the defendants, the Government did not follow the proper procedure, and consequently that the said sale is null and void so far as it relates to said ownership-in-common, as well as the successive transfers to Nereo Pirazzi and Zoila Lugo in that part relating to such tenancy in common.

The complainants are entitled to the undivided portion claimed in the proportion fixed by them.

Inasmuch as it does not appear that defendants possessed in *bad faith,* the claim as to fruits, rents and profits made by complainants does not lie, nor does the one for damages.

For any question of improvements the owners shall be subject to the provisions of section 370 of the Civil Code.

For the foregoing reasons the judgment appealed from must be reversed and the complainants held to be the owners in common of a portion equal to *"cincuenta y seis avas partes, sesenta y seis centésimas y sesenta y cinco milésimas"* of the whole property referred to in the complaint and now in possession of defendants Nereo Pirazzi and Zoila Lugo, and hence, the records of dominion of said property made in favor of defendants, and of the other defendant, his predecessor in title, Juan Vives y Font, are null and void so far as they affect the right of ownership-in-common declared in favor of complainants, without any adjudgment for fruits, rents and profits or for damages, all without special imposition of costs, disbursements and attorney's fees.

*Reversed.*

Chief Justice Hernández and Justice Aldrey concurred.

Justices del Toro and Hutchison concurred in the judgment.

#### CONCURRING OPINION OF MR. JUSTICE DEL TORO.

It appears from the record that the proceedings for the sale of the property for delinquent taxes were brought

against Natalio González as the sole owner of said property, whereas it is a fact that at that time the said property was recorded in the registry of property in favor of Natalio and all the other plaintiffs. In my mind this fact is sufficient to justify my concurrence in the reversal of the judgment without considering and establishing conclusions regarding the other points touched upon in the majority opinion of this court.