[S. F. No. 5723.    Department One.—May 16, 1911.]

In the Matter of the Estate of JOHN HINCHEON, Deceased. MARY HURLEY and WILLIAM R. STULTZ, Appellants.

ESTATE OF DECEASED PERSON—CLAIM BASED ON BUILDING CONTRACT— NECESSITY OF PRESENTATION—PAYMENT.—The amount due on a building contract made by a decedent, whether accrued or con-

tingent, is a proper subject of claim against his estate, but the demand, if not presented as a claim within the time limited, is barred, and no action thereon can be maintained, in the absence of such presentation. Neither he, nor a devisee of the building who has assumed to pay for its completion, can compel the executor to pay such demand.

ID.—VOLUNTARY PAYMENT BY DEVISEE OF BUILDING.—Where a devisee of a building in process of erection, upon the refusal of the executor to make proper expenditures from the estate to insure its preservation, individually pays for the same, such payment must be regarded as voluntary, and the devisee cannot recover the amount thereof from the estate.

ID.—EXPENDITURES FOR PRESERVATION OF BUILDING.—COMPLETION OF BUILDING.—It is within the province of an executor to make such expenditures on a building which was being erected by the decedent at the time of his death as may be reasonably necessary to preserve it pending administration. It is not his duty to complete the building.

ID.—DEVISE OF LAND AND BUILDING—DIRECTION FOR COMPLETION.—A devise of real property, described in the will as being property on which "is situate a cottage in course of construction," cannot be construed as a direction by the testator that the completion of the building should be a charge upon his estate.

ID.—DUTY OF EXECUTORS TO COMPLETE CONTRACTS OF TESTATOR—HOUSE BEING ERECTED BY DAY'S LABOR.—While it is the duty of executors to perform valid and uncompleted contracts which have been entered into by their testator, they are not called on, nor have they the right, to expend the funds of the estate for the doing of new work which the testator himself was not bound to do. Such expenditure, unless incurred for the preservation of the property of the decedent, is not a charge upon the estate. This rule applies to a building which was being erected by the testator by day's labor, as to which there were no unfinished contracts outstanding. The fact that the testator believed that the building was substantially completed is immaterial.

ID.—FUNERAL EXPENSES PAID BY THIRD PERSON.—ESTATE SHOULD REPAY.—Money paid for the funeral expenses of a decedent, by one not acting officiously, if reasonable, considering the estate of the deceased and the circumstances surrounding the death and burial, should be repaid by the estate to the party paying them.

ID.—PAYMENT IN COMPLIANCE WITH SUPPOSED CONTRACT—VOLUNTARY PAYMENT.—Money so paid, in compliance with what the payer thought to be a contract with the deceased obligating her to do so, in consideration of the deceased giving her a lot with a completed building thereon, will not be deemed a voluntary payment, if the payer, at the time of payment, was ignorant of the facts that the building was uncompleted and that no such deed of gift had been

made, and the will directed the funeral expenses to be paid from the estate.

ID.—REQUEST OF TESTATOR MADE TO THIRD PERSON—REMOVAL OF REMAINS OF RELATIVES.—A request made by a testator of a third person to remove to his burial plot the remains of certain of his relatives and to erect a monument over his grave, is not binding upon his executors.

APPEAL from a decree of the Superior Court of Alameda County distributing the estate of a deceased person. Wm. S. Wells, Judge.

The facts are stated in the opinion of the court.

M. C. Hassett, for Appellants.

Vance McClymonds, Dudley Kinsell, and T. S. Gray, for Respondents.

SLOSS, J.—John Hincheon died April 1, 1909, leaving a will which was admitted to probate in the superior court of Alameda County on April 25, 1909. Letters testamentary were issued to Dudley Kinsell and Robert W. Inches, the executors named.

The will contained the following provisions:—

"First. To Mary Hurley of San Francisco, California, I give, devise and bequeath that real property owned by me, and which is situate on the north side of East 27th Street, East Oakland, Cal., and on which property is situate a cottage in course of construction.

"Second. Out of the balance of my estate I direct that all my just debts, funeral expenses, charges and expenses of last illness and of administration shall be paid; and out of such residue shall be paid the bequests hereinafter set out."

By the third, fourth, fifth, six, seventh, eighth, and ninth paragraphs the testator gave various cash legacies aggregating the sum of $2250, and also certain furniture and pictures. The tenth paragraph was as follows: "If, after the payment of the legacies and bequests within mentioned, there shall be any residue, then such residue, if any there be, I give, devise and bequeath to my two nephews, John Sharkey, Jr. and Joseph C. Sharkey, share and share alike." The will bore the date of April 1, 1909, the day of Hincheon's death.

On April 21, 1910, the executors filed their final account with a petition for the distribution of the estate. Their account showed sufficient money on hand to pay all cash legacies and also something over five hundred dollars to each of the residuary legatees.

On the day on which the final account and petition for distribution were to come on for hearing, Mary Hurley, the devisee named in the first paragraph of the will, filed a petition "for construction of the will" and for payment to her of certain sums of money. In this petition she alleged that about a week before the death of Hincheon he had informed the petitioner that he intended to make a deed of gift to her of the lot mentioned in the will and the house thereon, and had stated that the house was practically completed; that upon the same occasion he had requested that in case of his death the petitioner would have his remains interred in a certain cemetery and provide for perpetual care thereof, and had also expressed a desire to have the remains of his deceased mother and sister interred in said cemetery, and a suitable monument erected at his grave. She further alleged that on the death of the decedent, and between the second and sixth days of April, she made the necessary arrangements for the burial of the decedent as requested by him and paid out of her own money for that purpose the sum of $257. After the burial of the decedent she learned for the first time that the house was not completed, and, upon being advised by the executors that it was necessary that she should advance money to protect the house from injury she paid out for lumber and work done on said building sums amounting to $148.32. She further alleged that one White had made a contract with the deceased to paint said house and that a balance of $155 would be due on said contract when completed; that one William R. Stultz had made a contract with the deceased for doing the plumbing work of said house and that a balance of $110 would be due on said contract when completed.

The petitioner, as she avers, made herself personally liable to said White and Stultz for the payment of their contracts, the completion of said painting and plumbing work being necessary for the protection of the building, and said work was completed according to the contracts made with the decedent. It is alleged that after the payment of all of the work

mentioned a further sum of $361 will have to be expended to complete the building and that $220 will have to be expended to remove the remains of the decedent's mother and sister to the burial plot in which his body is interred and to erect a suitable monument at his grave.

The prayer of the petition is that the executors of the estate pay to the petitioner the sums expended by her for work done on the building and for the burial of the defendant; that they pay her the sum of $361 required to complete the building; that the court order the executors to pay to Stultz $110 for the plumbing work performed by him under his contract with the decedent, and that the executors be ordered to remove the remains of the decedent's mother and sister and bury the same in his burial plot and erect a monument there.

At the same time Stultz filed his petition for payment out of the funds of the estate of the $110 remaining due on his contract.

The account, the petition for distribution, and the said petitions of Mary Hurley and W. R. Stultz came on for hearing, whereupon the court denied the petitions of Stultz and Hurley and settled the account as presented. A decree of distribution was entered distributing to Mary Hurley the real property described in the will, distributing the money legacies and the specific legacies to the respective legatees, and the residue to the residuary legatees named in the tenth paragraph. Mary Hurley and William R. Stultz appealed from the whole of the decree except that part which distributes to Mary Hurley the lot described in the decree.

a. The prayer for payment to Stultz of the balance ($110) due on his account.

It appears from the bill of exceptions that with the exception of the painting and plumbing work contracted for by the decedent with White and Stultz, the house in question was being constructed by Hincheon by day's labor. A claim for the balance due on his contract had been presented by White to the executors and rejected by them. He had thereupon commenced an action upon his rejected claim and recovered judgment payable in due course of administration. The final account shows that this judgment had been fully paid. Stultz had failed to present any claim and the time for such presentation had expired at the time the account was filed. Under

these circumstances it seems clear that he, as an appellant herein, is not entitled to relief. The amount due on any contract made by the decedent, whether accrued or contingent, was, of course, a proper subject of claim against the estate, but the demand, if not presented as a claim within the time limited, was barred. (Code Civ. Proc., sec. 1493.) Having failed to present a claim, Stultz has lost his right to maintain any action against the estate. (Code Civ. Proc., sec. 1500.) His claim might have been collected if he had followed the procedure adopted by White. Having omitted to do so, he has in effect waived his demand against the estate. The court cannot relieve him of the consequences of his own neglect by directing the executors to pay a demand which became barred by his failure to pursue the plain requirements of the statute. Upon like grounds, Mary Hurley has no standing to compel the estate to pay the claim of Stultz. If, by reason of her guaranty to Stultz, she should be compelled to reimburse him, she would at most be subrogated to his rights against the estate. But she cannot, in this way, acquire rights greater than those held by the party under whom she might claim subrogation. (27 Am. & Eng. Ency. of Law, 2d ed., p. 206.)

b. The claim for repayment of money expended on the house, and for the payment of further sums required for completion.

These two items, covered by the petition of Mary Hurley, stand upon a different ground from the matters already discussed. It is no doubt the duty of the executor or administrator to make such expenditures as may be reasonably necessary to preserve the property of the decedent pending administration. (*In re Clos*, 110 Cal. 494, [42 Pac. 971].) It is alleged in the petition that the sum of $148.32 was expended by Miss Hurley in order to protect the house "from great loss and injury owing to its uncompleted condition" and the evidence shows without substantial conflict that this was the real purpose of the expenditure. The petitioner herself testified that when she saw the house there was a lot of lumber cut and standing up against the walls and that both executors had told her that it was "very necessary to protect the house and just as well to go on and put this lumber in place so that it could not be stolen; that the house should be protected; the lumber put in place and the doors fastened."

Both executors testified, and neither controverted Miss Hurley's testimony in this regard. Mr. Inches, one of the executors, had himself been the foreman in charge of the work for the decedent and he did the new work under Miss Hurley's instructions. According to Mr. Kinsell's testimony, he had said to Miss Hurley that the executors had no authority to complete the work "notwithstanding the fact that it might be necessary for the preservation of the estate." In this, we think, he took an erroneous view of the extent of the powers of executors. As above stated, they did have the right and it was their duty to make such expenditures as were necessary to preserve the property left by the decedent. If, in order to effect such preservation, they, instead of Miss Hurley, had made the expenditures of $148.32 for putting the lumber in place, they would undoubtedly have been entitled to claim reimbursement from the funds of the estate. (*In re Clos,* 110 Cal. 494, [42 Pac. 971].) But they declined to make this payment and Miss Hurley, with full knowledge of the facts made it herself. We think her payment to this extent must be regarded as voluntary and that she cannot recover the amount from the estate. Upon the refusal of the executors to go ahead she could have applied to the court for an order requiring them to make such expenditures as were necessary to protect the property. She did not do this but expended the money herself. There was no such compulsion as would make her payment involuntary and she must take the consequences of her own action.

The item of $361, estimated to be necessary to complete the building, does not come within the rule authorizing expenditures for the preservation of the estate. In the first place, the administration was virtually over when this matter was brought up. The doing of the work then could hardly have been required to preserve the house during administration. Besides, the petition does not aver that this payment must be made to preserve the estate, but alleges merely that it will be necessary to complete the building. The evidence, too, supports the conclusion that the real purpose of this proposed expenditure was to make a completed house rather than to protect from injury the unfinished structure.

But, apart from the duty of executors to preserve the estate, the appellant Hurley contends that upon a proper construc-

tion of the will the testator directed that the completion of the building should be a charge upon his estate. We may assume that an executor is protected in carrying out the provisions of the will with reference to improvements of the testator's estate (18 Cyc. 272), but so conceding, we think the will in question cannot be interpreted as intended to authorize any such improvements. The gift to Mary Hurley was of certain real property "on which property is situate a cottage in course of construction." The will did not purport to give her a completed building. It gave her the lot, together with a building expressly described as unfinished. As we have said, the building was being constructed by day's labor and there were no contracts outstanding with the exception of those of White and Stultz. While it is the duty of executors to perform valid and uncompleted contracts which have been entered into by their testator, they are not called on, nor have they the right, to expend the funds of the estate for the doing of new work which the testator himself was not bound to do. Such expenditure, unless incurred for the preservation of the property of the decedent, is not a charge upon the estate In *In re Moore*, 72 Cal. 335, [13 Pac. 880], an administrator had expended moneys of the estate in the erection of a new building upon property belonging to the decedent, and claimed reimbursement. It was held that the court erred in allowing this claim, saying: "This money was not expended in the care and management of the estate. It was the duty of the administrator to administer and turn over the estate as soon as possible, and not to speculate with it, or carry on business on its account, or to improve it for the benefit of the heirs." So, in *Byrd* v. *Governor*, 2 Mo. 102, the decedent had constructed foundations for a house and the administrator completed the house thereon. The court held this to be a misapplication of the funds of the estate. (See, also, *Gray* v. *Hawkins*, 8 Ohio St, 449, [72 Am. Dec. 600].

The fact that, as shown by Miss Hurley's testimony, the decedent believed that the house was substantially completed cannot alter these conclusions. The language of the will is plain. It gives to the devisee the lot with a house in course of construction. To import into this a direction that the house should be brought to the point at which the testator believed it was, would not be to construe the will, but, rather, to add

to it a provision which the testator did not insert.   Miss Hurley's testimony was that Hincheon said to her about a week before his death that he was going to give her a deed of gift of the house and that in answer to a question by her as to its completion he had said, "Yes, it is all finished.   There may be a few locks to put on the closet doors and on the doors; otherwise it is finished," and that thereupon he said "I want you to do something for me; I want to have my body put in perpetual care and move my mother's and sister's remains and put a monument over it."   It can hardly be claimed that this testimony showed a contract by which the decedent agreed, in consideration of the payment of certain burial expenses, to make to Miss Hurley a deed of the house.   But, if the testimony could be so viewed, the answer is that this proceeding is not one to enforce the supposed contract.   In an action upon such contract it might be possible, if the parties were shown to have been laboring under a mutual mistake as to a material fact, to reform the agreement and enforce it according to its true intent.   But no such proceeding has been taken.   The petitioner is not relying on an agreement to make a deed of gift to her but is claiming under the will.   So claiming she can take no more than the will has given her, and that is a lot with an uncompleted building standing upon it.

c. The claim for payment of funeral expenses incurred by Miss Hurley.

The funeral expenses paid by her were expended immediately after Hincheon's death and before she was aware of the terms of his will or of the fact that the cottage was far from completion.   In view of paragraph two of the will there can be no doubt that the testator intended that his funeral expenses should be paid out of his estate.   Miss Hurley was a relative of Hincheon.   It is not questioned by the respondents that money paid for funeral expenses by one not acting officiously, if reasonable considering the estate of the deceased and the circumstances surrounding the death and burial, will be repaid by the estate to the party paying them.   (2 Woerner on American Law of Administration, 2d ed., sec. 357; *France's Estate,* 75 Pa. St. 220.)   This is a proper, and, indeed, a necessary rule in view of the fact that the burial must often be provided for before an executor or administrator can be appointed.   The money advanced for this purpose by Mary

Hurley should, therefore, in justice, be refunded. The only answer to her demand in this regard is that she paid the money voluntarily. But this claim, we think, cannot, under the circumstances disclosed by the bill of exceptions, be supported. The claim of the respondent is that she agreed with the decedent to make such payment in consideration of his giving her the East Oakland property. It would, as we have already suggested, require an extreme construction of the evidence to hold that it established any such agreement. However, even if Miss Hurley made the payment in compliance with what she thought to be a contract, she should not be held to be a volunteer unless she acted with knowledge of the facts. Her supposed undertaking to pay the funeral expenses was made upon the understanding that she was receiving a deed of gift of a completed house. The house was not completed and a deed of gift was not, in fact, made. The expenditures were incurred by her before she was in possession of these facts. It is more than probable that if she had known the terms of the will and had been aware of the condition of the house she would not have paid these expenses. When it appeared that the facts were not as she had supposed them to be and that she was not receiving the consideration which she had believed she was to get, she was entitled to claim her rights under the will. The testator had evidently not acted on the theory that there was any binding agreement. He had not made a deed of gift, and had expressly declared his intention that the funeral expenses should be borne by the estate. Her payment of the same under these circumstances was not voluntary and she should be reimbursed therefor out of the estate.

d. The prayer for payment of the expenses of removing the remains of Hincheon's mother and sister and of erecting a monument.

It cannot be held that it was the court's duty to direct the executors to remove to the burial plot of the decedent the remains of his mother and sister and to erect a monument over his grave. The will contained no directions in this regard. The sole foundation for this claim is the request of the decedent to Miss Hurley. This request was not binding upon the executors or the estate.

The decree is reversed with directions to the court below to

enter a decree in conformity with the views expressed in this opinion.

Angellotti, J., and Shaw, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank, and filed the following opinion on June 16, 1911:—

BEATTY, C. J.—I think the decree herein should have been modified to the extent of allowing Miss Hurley the $148.32 expended by her for the preservation of the estate.   Her omission to seek an order of the court to compel the executors to make the expenditure, conceded to have been necessary, and a part of their duty as executors, ought not to defeat her claim for reimbursement on the ground that she was a volunteer.   Neither ought the fact that the property to be preserved was devised to her to have stood in the way of the allowance.   The devise was subject to a precatory trust, not expressed in the will it is true, but clearly proved, and involving a considerable expense if executed as presumably it will be.   The real intention of the testator will not be fulfilled as between the devisee and the residuary legatees by burdening the devise with an expense that should have been charged to the residue of the estate.