# Donnelly's Estate.

*Decedents' estates—Insolvent estates—Loans to executors for benefit of estate—Priority.*

1. At the death of a decedent, the claims of his creditors against the property of which he died possessed are fixed; the rights of such creditors do not extend to or include anything which the executors may afterwards be able to borrow for the purpose of protecting the assets or in aid of proper administration.

2. To preserve an estate from loss, parties interested therein may in good faith advance money to the executors, and such parties will be protected in such advances and will be entitled to priority of payment over general creditors where it appears that such advances have resulted in a benefit to the estate and in the preservation of the assets for the creditors.

3. Upon the adjudication of a decedent's estate, persons who had advanced money to the executors were properly reimbursed in priority to general creditors, where it appeared that the testator had died owning real property valued at $2,500,000, subject to mortgages aggregating $1,400,000 and personal property appraised at $748,673.30, consisting of securities which were pledged; that owing to forced sales, the estate proved to be insolvent; that the proceeds of testator's life insurance, amounting to $139,244.38, which had been paid to the widow and children, had been loaned to the executors for the convenience of the estate, to be paid back when the estate should be able to do so; that part of such insurance moneys had been used to redeem certain stock pledged as security for certain notes, which stock was afterwards sold by the administrator for a price exceeding the price paid to redeem it and part to pay interest on mortgages on real estate which was a valuable asset and worth more than the money paid on its account; the lower court having found that the payment of such sum resulted in a benefit to the estate and in the preservation of the assets for the creditors.

*Executors and administrators—Debts of decedents—Payment of secured debts—Discretion—Improper disbursements—Surcharge—Compensation.*

4. A finding by the Orphans' Court that the executors of a decedent's estate exercised a wise discretion in making certain payments and that the estate was benefited thereby and a refusal to surcharge the executors with such payments are proper, where it appeared that the executors had paid $16,200 to the holder of decedent's notes amounting to $27,000, and that such creditor held bonds and the note of a coal company endorsed by decedent and threatened to foreclose his holdings unless ten per cent. of the amount of the note was paid each month; that to prevent foreclosure, the executors made the payments and realized for the estate $120,000 out of its interest in the coal company.

5. Where in such a case the executors had been surcharged in the sum of $50,488, which was improperly advanced to a failing corporation in which the estate was heavily interested, the executors are properly credited to the amount of $30,000 received from the sale of the unencumbered real estate of the said corporation, although it appeared that the payments which were the basis of the surcharge were used by such corporation to discharge encumbrances on other and different real estate, where the court found that the expenditures were made in good faith and with the expectation of preserving the property for the estate.

6. In such a case, a creditor cannot complain that the auditing judge allowed as a set-off to the total surcharge against the executors a balance of $27,988.17 remaining from money advanced by the widow and children of decedent, which was used for the benefit of the estate, but which could not be traced as to the items of its expenditure.

7. In such a case, the executors are properly surcharged with a payment made to prevent a sale of bonds which decedent had borrowed and had used as collateral for loans, which were subsequently called, where such demand amounted to the granting of a preference to the owner of such bonds and the interest of the estate was not thereby advanced; and the same is true of payments on notes of decedent held by a corporation and one of the executors where no collateral was realized thereby.

8. In such case, it appeared that the executors had paid certain notes of decedent held by a creditor and by one of the executors although no collateral was released thereby and although it did not appear to have been necessary to protect the interest of the estate. *Held,* that the executors were properly surcharged with the amount of such payments.

9. The executors after filing their first account resigned and an administrator d. b. n. c. t. a. was appointed. The final decree of distribution of the balance stated by the administrator's account was filed four days before a decree of the court on exceptions to the ex-

ecutors' account was filed. The executors contended that the entry of the decree of distribution of the balance shown by the administrator's account before the executors' account had been finally audited, operated to their prejudice, and was error. It appeared that the executors had excepted to the adjudication of their account and had appealed from the decree which was entered, dismissing the exceptions; that they had also excepted to the decree of distribution of the balance shown by the administrator's account and had appealed from the decree dismissing their exceptions. It did not appear that the executors had lost any rights by the fact that in disposing of different branches of the litigation, one judge decided the questions assigned to him four days earlier than another judge of the same court disposed of the matters before him, and the decree dismissing exceptions to the decree of distribution of the balance shown by the administrator's account was affirmed.

10. In such case, it appeared that a decree dismissing exceptions to the decree of distribution of the balance shown by the administrator's account was filed January 5, 1914, but that the certiorari from the Supreme Court issued on the appeal of the executors was not brought into the office of the clerk of the Orphans' Court until February 9, 1914; that thereafter a creditor filed a petition alleging that he had received an award by such decree, that more than three weeks had elapsed since the entry thereof without any appeal which could affect the items awarded to petitioner being taken therefrom and prayed for an attachment to compel the administrator to pay the fund awarded to the petitioner. The administrator filed an answer in which he alleged that two appeals had been taken from the decree, one within three weeks after it was made and one, that of the executors, after the expiration of the three weeks. The court ordered the accountants to postpone payment of any part of the decree until the appeals were disposed of. *Held*, that as all the appeals had been argued together and were all being disposed of by the Supreme Court in one opinion, it did not appear that the appellant would gain anything if his appeal should be sustained; that the questions raised thereby were academic, and the appeal was dismissed.

Argued May 5, 1914. Appeals, Nos. 51, 56 and 71, Oct. T., 1914, by C. C. Murray, receiver of The First-Second National Bank of Pittsburgh, by the Diamond National Bank of Pittsburgh, and by Alice R. Donnelly, Bessie C. Donnelly and Frank F. Nicola, executors, respectively, from decree of O. C., Allegheny Co., June T.,

1913, No. 129, dismissing exceptions to decree of distribution in estate of Charles Donnelly, deceased. Appeals, Nos. 52 and 70, Oct. T., 1914, by C. C. Murray, receiver of the First-Second National Bank of Pittsburgh and by Alice R. Donnelly, Bessie C. Donnelly and Frank F. Nicola, executors, respectively, from decree of O. C., Allegheny Co., Feb. T., 1908, No. 112, dismissing exceptions to adjudication in estate of Charles Donnelly, deceased. Appeal, No. 96, Oct. T., 1914, by C. C. Murray, receiver of the First-Second National Bank of Pittsburgh, from decree of O. C., Allegheny Co., June T., 1913, No. 129, refusing attachment and postponing distribution in estate of Charles Donnelly, deceased. Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ. Affirmed.

From the record it appeared that Charles Donnelly died December 5, 1906, in the City of Pittsburgh, of which he was a resident, possessed of a large amount of real and personal estate. He named as executors of his will, his wife, Alice R. Donnelly, his daughter, Bessie C. Donnelly, and Frank F. Nicola, to whom letters testamentary were granted by the register of wills of Allegheny County. About one year later, the executors resigned, and filed their first and final account, and letters of administration d. b. n. c. t. a. were granted to the Commonwealth Trust Company of Pittsburgh. While the testator owned real estate valued at $2,500,-000, it was subject to mortgages aggregating $1,400,000 and his personalty which was appraised at $748,673.30, consisting mainly of securities which were pledged as collateral for notes on which he was either maker or endorser. At the time of his death his estate was believed to be worth at least $1,000,000 in excess of his indebtedness; but owing apparently to forced sales during a succeeding period of depression in real estate values, his estate has proved to be insolvent. The testator held policies of insurance on his life, written in favor of his

wife and children, amounting to $139,244.38, and the proceeds of these policies were collected by the beneficiaries, and the amount thereof was turned over to the executors, as stated, for the maintenance of the family, and the convenience of the estate, to be paid back as soon as the estate should be in position to do so. The sum of $30,375.53 was repaid by the executors, and $7,570 was used in paying certain debts of testator. The executors charged themselves with the sum of $139,-244.38 as "cash deposited with executors by heirs for family expenses and for temporary use by executors, as per Schedule D." This schedule shows in detail the proportionate parts of the fund deposited by each of the children, and by the widow. This account which was filed in January, 1908, showed a balance of $65,527.17 due the accountants. Exceptions to the account were filed on February 11, 1908. These exceptions were not disposed of until August 23, 1913, when OVER, P. J., filed an opinion in which he sustained certain of the exceptions and dismissed others. Exceptions having been filed to this opinion the same judge on December 16, 1913, filed another opinion in which he altered his findings in some particulars. In the decree made in pursuance of the latter opinion, the executors were surcharged with excessive commissions claimed, $36,992.19, and with various payments held to be improper, amounting to $45,723, a total surcharge of $82,715.19. From this was deducted a balance of the insurance money not distributed to the widow and children of $27,988.16, leaving a net surcharge of $54,727.03, thus reducing the balance due accountants to $10,800.14. To this decree, both the executors, and C. C. Murray, receiver of the First-Second National Bank of Pittsburgh, a creditor, filed exceptions, which were dismissed by the court. Both exceptants have appealed, the appeal of Murray, receiver, being at No. 52, October Term, 1914, and that of the executors being at No. 70, October Term, 1914. In the year 1909 the Commonwealth Trust Company,

administrator d. b. n. c. t. a. filed a first and partial account, showing a cash balance in its hands on February 28, 1909, of $86,467.58. Upon the audit of this account before MILLER, J., the widow and children claimed to be allowed as a preferred claim the balance of $101,-299.11 of the insurance money deposited by them with the executors as above stated. The auditing judge found that $40,000 of this sum, which was traced into stock of the Schenley Farms Land Company, should be thus allowed. Exceptions to the adjudication, by the accountant, were withdrawn without prejudice to the right to raise the same questions on the next audit in the estate. In 1913 the administrator d. b. n. c. t. a. filed a second and partial account, showing a cash balance on hand for distribution on April 30, 1913, of $112,396.02. This account was audited by MILLER, J., who re-awarded to the widow and children as preferred claimants, the sum of $40,000, as well as additional amounts of $27,198.88, and $313.88 and $475, in all $67,-987.76. Exceptions to the adjudication were filed apparently by the creditors. In an opinion by MILLER, J., these exceptions were sustained in part and dismissed in part; TRIMBLE, J., filing a dissenting opinion as to the allowance of any preference to the claim of the widow and children. A decree of distribution in accordance with the opinion of the court, was entered on December 12, 1913, in which to the balance in the hands of the accountants was added the amount paid creditors, increasing the amount for distribution to $126,485.77, and the Donnelly heirs were allowed the sum of $25,861.79 as a preferred claim, and were also allowed a pro rata dividend on $34,007.06. Exceptions were filed to the decree of distribution, apparently by the First National Bank of Pittsburgh, C. C. Murray, receiver of the First-Second National Bank of Pittsburgh, and by the Diamond National Bank of Pittsburgh. These exceptions were dismissed and C. C. Murray, receiver of the First-Second National Bank of Pittsburgh,

has appealed at No. 51, October Term, 1914, and the Diamond National Bank has appealed at No. 56, October Term, 1914.

Alice R. Donnelly, Bessie C. Donnelly and Frank F. Nicola, executors of Charles Donnelly, deceased, also filed exceptions to the final decree of distribution. These exceptions were dismissed, and the exceptants have appealed at No. 71, October Term, 1914.

The final decree dismissing the exceptions to the decree of distribution was filed January 5, 1914, but the certiorari from the Supreme Court, issued on the appeal of Alice R. Donnelly, et al., executors (No. 71), was not brought into the office of the clerk of the Orphans' Court until February 9, 1914, more than three weeks after the entry of the decree appealed from. On February 11, 1914, C. C. Murray, receiver, filed a petition averring two awards to him of $18,271.77 and $37,290.66 respectively, and setting forth that more than three weeks had elapsed since the final decree, without any appeals being taken therefrom, except by the petitioner and by the Diamond National Bank, but that the administrator refused on demand to comply with the decree of distribution. He prayed for a rule to show cause why an attachment should not issue, and the Orphans' Court granted such a rule. The administrator filed an answer in which he set up the three appeals from the decree, two of them taken within three weeks after it was made, and one, that of the executors, after the expiration of three weeks. The court on consideration of the petition and answer, on March 13, 1914, ordered, that the accountant postpone payment of any part of the decree until the pending appeals were disposed of. The petitioner, C. C. Murray, receiver of the First-Second National Bank of Pittsburgh, appealed from this decree at No. 96, October Term, 1914.

*Errors assigned* were the various decrees above mentioned.

*M. W. Acheson, Jr.,* of *Sterret and Acheson,* for C. C. Murray, receiver, appellant, with him *J. Rogers Mc-Creery,* for Diamond National Bank, appellant.

*W. K. Jennings,* with him *D. C. Jennings,* for appellee.

*Robert Woods Sutton,* with him *William B. Rodgers* and *Watson & Freeman,* for Alice R. Donnelly, Bessie C. Donnelly and Frank P. Nicola, executors, appellants and appellees.

OPINION BY MR. JUSTICE POTTER, July 1, 1914:

We have here several appeals from decrees and orders of the Orphans' Court of Allegheny County made in the settlement of the estate of Charles Donnelly, deceased. These appeals have been argued together and will all be disposed of in one opinion.

We take up first for consideration Appeals No. 51 and No. 56, which are by C. C. Murray, receiver of the First-Second National Bank of Pittsburgh, and by the Diamond National Bank of Pittsburgh, respectively. They are both from the final decree dismissing exceptions to the decree of distribution of the balance shown by the second account of the administrator, d. b. n. c. t. a., and they involve the same question. Ten assignments of error have been filed, but the only question raised, is whether the court below erred in awarding to the decedent's widow and children, by way of preference, the so-called Union Switch & Signal item, at $27,198.88, and the so-called Ben Venue property item, at $313.88, making a total of $27,512.76. From this was deducted a six per cent. pro rata dividend formerly awarded, being $1,650.97, leaving a net preference of $25,861.79. The court below found as a fact that on March 4, 1907, there was paid to the Fidelity Title and Trust Company, out of the insurance money, the sum of $27,196.88 for the release of a large block of shares of the Union Switch &

Signal Company, pledged as collateral on decedent's notes, and these shares, or at least 440 of them, were afterwards sold by the administrator for a price exceeding the price paid to redeem them. Also that $313.88 of the insurance money was used on January 14, 1907, to pay interest on mortgages on real estate, which is a valuable asset of the estate, and worth more than the money paid out on its account. The court below held that the payment of this total sum of $27,512.76 resulted in a benefit to the estate, and in the preservation of the assets for the creditors, and that therefore the persons who advanced it were entitled to reimbursement. In reaching this conclusion, the court below cited and relied upon the decision in Mustin's Est., 188 Pa. 544, where this court by Mr. Justice DEAN said (p. 549) : "To preserve an estate from great loss the personal representatives may in good faith advance money and will be protected in such advancement, and the Orphans' Court will see that they are reimbursed on settlement of their account. This has been frequently decided." In Bentley's Est., 196 Pa. 497, where an executor advanced his own money to pay the debts of the decedent, Mr. Justice MITCHELL said (p. 499) : "Waller (executor) was not a mere volunteer. It was his duty as executor to serve the best interests of the estate, and while this duty did not go so far as to impose any obligation on him to use his own funds for that purpose, it authorized him to do so and was sufficient to sustain a claim for reimbursement: McCurdy's App., 5 W. & S. 397." The court below based its action upon a distinct finding in this case, that the use of individual funds advanced to the executors by the heirs resulted in a distinct advantage to the estate. It may not have been necessary to go thus far, but certainly the position affords full justification for the action which was taken. The persons who advanced these funds to the executors were not creditors of the decedent. The deposit of their individual funds with the executors was in aid of the set-

tlement of the estate and was for use in the protection of its assets. In paying back this money, which was merely a temporary loan to the executors, for the benefit of the estate, no harm is done to the estate itself, nor to its creditors. The payment is to that extent, only the return of that which was advanced to the executors as an aid to the administration. At the death of Charles Donnelly, the claims of his creditors were fixed against all the property of which he died possessed; but the rights of the creditors did not extend to or include anything which the executors might afterwards be able to borrow, for the purpose of protecting the assets, or in aid of proper administration. The general principle that equitable assets are to be distributed equally among all the creditors without reference to priority, is undoubted, but the funds here in question, which were temporarily placed with the executors by the heirs, constituted no part of the estate in the hands of the executors for distribution to creditors. Therefore, we feel that the court below was entirely justified in the preference which it awarded to the widow and children. It was merely restoring to them, money of their own, which had been temporarily deposited in the hands of the executors, for the purpose of enabling them to protect the assets. This action of the heirs was undoubtedly intended to benefit the estate and the creditors, by preventing the sacrifice of the assets; and as a matter of fact, as found by the court below, it did result in benefit. As the court below well says, in view of the proof that the creditors have gained by this transaction, and by the temporary use of funds advanced by the heirs, which did not belong to the Donnelly Estate, and became no part thereof, it would be against conscience to refuse a preference in restoring these funds to the parties who advanced them. The assignments of error in the appeals at No. 51 and No. 56, October Term, 1914, are overruled, and these appeals are dismissed.

APPEAL NO. 52.

This appeal is by C. C. Murray, receiver of the First-Second National Bank of Pittsburgh, from the final decree of the court below on exceptions to the account of the executors. There are nine assignments of error, under which counsel for appellant contend, that the court below erred in four particulars: (1) In failure to surcharge the accountants with $16,200, which they paid to J. M. Guffey upon a note of the decedent, Charles Donnelly, for $27,000. At to this President Judge OVER in his opinion dismissing exceptions, said: "Mr. Guffey held a large amount of bonds and a $100,000 note of the Federal Coal and Coke Company, endorsed by the decedent, who was the principal stockholder in the company, owning 2,450 shares. Mr. Guffey threatened to foreclose his holdings, unless ten per cent. of the amount of the note was paid each month; to prevent this the executors made the payments, and their successor realized for the estate $120,000 out of its interest in this company. The executors exercised a wise discretion in making these payments; the estate was benefited thereby." We see no reason to differ with the court below in the view thus expressed. We find nothing in the evidence to indicate that in their management of this particular matter the executors failed to exercise reasonable business prudence. The payments seemed to be necessary to insure the preservation of a valuable asset, which otherwise would have been lost. The event seems to have justified the action of the executors, as the interest which they thus sought to protect, afterwards sold for $120,000.

(2) The second particular in which the court below is charged with error, is in deducting $30,000, realized from the sale of property of the Pittsburgh Milling Company, which was principally owned by Donnelly, from the surcharge of $50,488, which was made on account of disbursements in connection with the property of that

company, which the court held were improper. It is argued on behalf of the appellant, that as the $30,000 was realized from the sale of unencumbered real estate of the milling company, while the expenditures which are the basis of the surcharge were made on entirely different real estate, which was heavily encumbered, the creditors were entitled to the amount received by the executors, and it should not be used as an off-set to their improper disbursements. The auditing judge in his adjudication dismissed the exceptions to these claims for credit, on the ground that the creditors had ratified the expenditures in question; but the court afterwards sustained exceptions to the adjudication, and surcharged accountants with $20,488, which was intended to be the amount of the net loss made by payments on account of the Pittsburgh Milling Company's property. There seems to be an error in arriving at this amount, which will be considered later in connection with the appeal of the executors at No. 70, October Term, 1914. The finding of the auditing judge that the expenditures upon the milling company's property were made in good faith, and with the expectation of preserving the property for the estate, was not disturbed. The interest of the decedent was in the stock of the corporation, and as a creditor thereof, and was not directly in the real estate of the Pittsburgh Milling Company, which was sold. As the accountants acted in good faith, in the entire matter, it seems to us that the court below was justified in charging them only with the net loss which resulted from their efforts to make the stock valuable, and the claim against the company, good. If they were to be surcharged with the expenditures which they made in the effort to save the property of the milling company, and thus save decedent's holding in the stock, it is only fair that they should be allowed credit for the amount which they secured, and returned to the estate, from the sale of the milling company's property. We think

the contention of appellant in this respect is without merit.

(3) The third particular in which the court below is here charged with error, is in deducting from the total surcharge against the accountants the balance of $27,-988.17 remaining from the insurance money, not distributed to the widow and children of decedent. We do not see what standing the creditors have to complain of this. As between them and the accountants, the action of the court below was proper. None of the insurance money, which amounted to $139,244.38 belonged to the estate. It was deposited with the accountants, for temporary use in the settlement of the estate and the lenders were entitled to have it returned to them. As we understand it, all of the money thus loaned to the estate was either returned, or awarded to the widow and children, except this sum of $27,988.17, which could not be traced with any degree of particularity as to its expenditure. However, the creditors were not entitled to this money. It never belonged to the estate. If it was used in expenditures which were the subjects of surcharge, the accountants were entitled to credit to that extent. But in no event were they under any obligation to turn it over to the creditors. As between the executors and the heirs, the question of the ownership of this fund may be an open one; but this question does not arise under the present appeal.

(4) The last particular, in which it is here alleged that the court below erred, is in allowing excessive compensation to accountants for their services. In filing the account, credit was taken by accountants for compensation in the sum of $61,992.19, being five per cent. of the gross charges in the account. The court below surcharged them with $36,992.19, thus reducing their compensation to $25,000. We think this was a matter peculiarly within the discretion of the court below, and see no good reason for disturbing in any way, its action in this respect.

APPEAL No. 70.

This is an appeal by the executors from the same de-
cree as that from which the appeal of C. C. Murray,
receiver, which has just been considered, was taken.
Appellants complain that the insurance money, in so far
as it was traceable into any particular fund, was award-
ed to the widow and heirs of decedent, and was not ap-
plied as an off-set to the surcharges made against ap-
pellants. Admittedly this insurance money was loaned
by the widow and heirs to the executors. We are clear
that the court below was right in awarding what it did,
to the widow and children. The doubtful point in the
matter would seem to be, as was suggested in consider-
ing the preceding appeal, whether the balance of $27,-
988.17 of insurance money, which was not specifically
traced, should not also have been awarded to the widow
and children, by whom as owners of the entire fund, it
was deposited with the executors. However, that ques-
tion is not before us for decision as it does not seem to
have been raised in any of these appeals. Complaint is
also made by these appellants, that the court below
surcharged them with the sum paid out in excess of re-
ceipts on the property of the Pittsburgh Milling Com-
pany, $20,488. Counsel for appellants maintain that
conceding the soundness of the reasoning of the court
below the surcharge on this item is too much by $10,-
391.96, and that this is the result of clerical error, in
summing up the items for which the court intended to
surcharge, as shown on Schedule L. The figures as pre-
sented are not entirely clear to us, and we suggest that
this item be taken up for examination by the court be-
low. If as is claimed there is an error in failing to
eliminate from the sum of the payments made on ac-
count of the milling company property, the items of in-
terest paid on obligations which were allowed by the
court, such error, will of course, be corrected. As to
the principle involved, we think the court below was

correct. While the executors undoubtedly acted in good faith in making these disbursements, and their purpose was to protect the interests of the estate, in the stock of the milling company, yet as a matter of fact, the entire interest was lost, together with the money which was used by the executors in the hope of saving it, with the exception of the $30,000 for which credit is given in the court below. We cannot regard it as proper, to use the funds of an estate in aid of a corporation which is in financial difficulties, even though the estate may be a controlling stockholder in that corporation. Where money is so used and is lost, the executors are properly chargeable with the loss. If the executors felt that such expenditures were necessary in the interest of the estate, before proceeding in the matter they should have applied for the approval of the Orphans' Court, and have given notice to the creditors, and all parties in interest. Not having taken this obvious step to protect themselves, they must be held responsible for the result of the exercise of their judgment.

Objection is also made to the surcharges for amounts paid to the German National Bank, for the release of certain bonds. The sums of $5,000 and $10,000 were paid to the German National Bank to release certain bonds, which the decedent had borrowed from one Barnsdall, and had used for collateral, in connection with some Union Natural Gas Company stock belonging to the estate, which was sold for $1,300. The auditing judge allowed credit for the latter sum, and surcharged the accountants as to this matter, in the sum of $5,000 and $8,700. In his opinion he said: "The bonds referred to belong to Barnsdall; were loaned to Donnelly, who pledged them as collateral for his note; Barnsdall demanded his bonds; the loans were called, and to prevent the sale of the bonds, the executors paid the notes and delivered the bonds to Barnsdall. There was no necessity for making these payments, to protect the interest of the estate." Under this finding of fact the sur-

charges were proper.  Payment of the notes resulted in giving a preference to the bank and to Barnsdall, and as the estate was insolvent, the executors were properly surcharged.

Another item of surcharge to which objection is made, is for payment made on account of the Barnes note. No collateral was released by this payment and it does not seem to have been necessary in order to protect the interest of the estate.  It was properly made the subject of a surcharge.  The same may be said with respect to the payment of Mrs. Donnelly's note for $10,035. This payment was the more objectionable, in that Mrs. Donnelly was herself one of the executors.

Subject to further examination in the court below of the amount of the surcharge for excess payments on the property of the Pittsburgh Milling Company as noted above and the correction of any error in the inclusion of items of interest on obligations allowed by the court, that may be there found, the assignments of error filed in this appeal are overruled.

## APPEAL No. 71.

This is an appeal by the executors from the final decree dismissing exceptions to the decree of distribution of the balance shown by the second account of the administrator, d. b. n. c. t. a.  The complaint is made that the final decree in this accounting, was made four days before an opinion of the same court written by another judge, was handed down upon the exceptions to the executors' account at No. 112, February Term, 1908.  It is argued that the entry of the decree on the account last filed, before the account first filed had been finally audited, operated to the prejudice of appellants.  That such has been the result is not clear to us.  Appellants had the right to except to the adjudication of their account, and to appeal from the decree which was entered after disposing of their exceptions.  They have exercised that right.  They also filed exceptions to, and they

have appealed from, the decree of distribution of the balance shown by the account of the administrator, d. b. n. c. t. a. It is not apparent how any of the rights of appellants have been lost, by the fact that in disposing of the different branches of this litigation, one judge happened to decide the questions assigned to him for consideration, four days earlier than a judge of the same court, having charge of another branch of the same litigation, disposed of the matters before him. It also appears, that in their second, third, and fourth assignments of error, counsel for appellants have sought to raise questions not included in their statement of questions involved, and which they have not referred to in the argument. These questions will not, therefore, be considered.

### APPEAL No. 96.

In this appeal, the receiver of the First-Second National Bank of Pittsburgh, a creditor, complains of the action of the court below, in directing the postponement of payment of everything under the decree of distribution, until the appeals pending are all disposed of. As all the appeals referred to in the order which is assigned as error, have been argued together in this court, and are all to be disposed of in this opinion, it does not seem that this particular appellant would gain anything if his appeal should be sustained, and the order of the court below postponing payment, should be reversed.

The point raised by counsel for this appellant, as to his right to immediate distribution, may be well taken, but the question as here and now presented is purely academic, and for that reason we do not think it necessary to consider it.

Saving for re-examination in the court below, the correctness of the figures in the item of surcharge for money paid out in excess of receipts on the property of the Pittsburgh Milling Company, the Appeal at No. 70, October Term, 1914, is dismissed at the cost of appel-

lants.   So also is the Appeal at No. 52, October Term, 1914, dismissed at the cost of appellant.  With the exception noted, the decree of the Orphans' Court at its No. 112, February Term, 1908, is affirmed.  The Appeals at No. 51, No. 56 and No. 96 are dismissed at the cost of appellant in each case.   The appeal at No. 71 is also dismissed at the cost of appellants, and the decree of the Orphans' Court at its No. 129, June Term, 1913, is affirmed.