[Civ. No. 5625.   Third Appellate District.—August 22, 1936.]

In the Matter of the Estate of MARY STEWART SMITH, Deceased. THE BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Appellant, v. EDWARD C. ROBINSON, as Executor, etc., et al., Respondents.

Rich, Weis & Carlin, Louis Ferrari and G. D. Schilling for Appellant.

Breed, Burpee & Robinson and Sanford Wilson for Respondents.

THOMPSON, J.—The Bank of America National Trust and Savings Association has appealed from an order of the probate court denying priority of its claim against the estate of Mary Stewart Smith, deceased, which obligation is represented by unsecured notes executed pursuant to a previous order procured under the provisions of section 1577a of the Code of Civil Procedure to carry on the farming and orchard business of the decedent. It is asserted this obligation is entitled to priority over the ordinary debts of the estate on the theory that the purpose for which the loan was secured characterizes it as money used for expenses of administration.

Mary Stewart Smith died testate September 30, 1929, possessed of 134 acres of orchard and farming land in Sutter County, together with other property. Her will was subsequently admitted to probate. Edward C. Robinson and Frank G. Bremer were appointed and qualified as executors of the will. The first codicil to the will contains the following clause:

"My executors are hereby empowered and directed to carry on the business of ranching and orchardists as fully as I have been doing on my real properties, and not to sell said real properties, or any thereof for at least two years after my death, unless and until they deem it advisable to sooner do so."

In November, 1929, upon petition of the executors filed pursuant to the provisions of section 1577a of the Code of Civil Procedure, they were authorized to "continue with the operation of decedent's orchard and ranch business" and to borrow for the benefit of the estate not to exceed the sum of $10,000 for that purpose. In accordance with that order the Bank of America loaned to the estate the aggregate sum of $9,500 at various times in the year 1930 evidenced by eight unsecured notes signed "Estate of Mary Stewart Smith, Deceased" by Edward Constant Robinson and Frank G. Bremer, as executors, no part of which has

been paid. It appears that most of the money borrowed from the appellant was expended incident to the conducting of the farming enterprise. The orchard which existed on the premises was removed by the executors and the land was used for the production of barley. A small proportion of the money was used to pay taxes and a legacy provided for by the will. The farming enterprise did not prosper.

In 1934 the bank filed a petition asking the probate court to determine that its claim of $9,500 and accrued interest constitutes "expenses of administration of said estate" and praying for the adjudication of a lien upon the assets of the estate payable as a preferred claim over all other obligations except costs of last illness, burial expenses and other current expenses of administration.

Objections to the granting of this petition were filed by the executors and by Greenwich Investment Corporation, a creditor of the estate which holds allowed claims in the aggregate sum of about $17,000. Upon the hearing of that petition the court determined that the obligations of the estate represented by the unsecured promissory notes of the Bank of America are not entitled to priority as "expenses of administration" as distinguished from other debts. From this order the bank has appealed.

Under the provisions of section 1581 of the Code of Civil Procedure, as amended in 1929 (Stats. 1929, p. 157), now section 572 of the Probate Code, the court was empowered to authorize the executors of the Smith estate to continue the operations of the decedent's ranching business, independently of the clause of the will directing them so to do. (*Estate of Ward,* 127 Cal. App. 347 [15 Pac. (2d) 901].) Section 1581 of the Code of Civil Procedure, as amended, then provided in part:

"After notice to all persons interested in an estate, given in such manner as may be directed by the court or a judge thereof, the court may authorize the executor or administrator to continue the operation of the decedent's business to such an extent and subject to such restrictions as may seem to the court to be for the best interest of the estate and those interested therein."

This amendment merely enlarged the powers of the representatives of an estate and authorized them to continue the business of a decedent under an order of court subject

to such restrictions as may be imposed, which privilege was not previously permitted by statute. The amendment did not have the effect of creating a lien upon the assets of the estate to enforce the payment of obligations incurred on that account as preferred claims. ▮ It did not change the nature, character or classification of an obligation of the estate created pursuant to the provisions of section 1577a of the Code of Civil Procedure. The last-mentioned section contained a general provision authorizing the borrowing of money by the representatives of an estate upon unsecured notes. It had no special application to borrowing money for the purpose of carrying on the business of a decedent.

The appellant asserts that money borrowed and used by the representatives of an estate to carry on the business of a decedent automatically classifies the funds as ''expenses of administration'' used for the purpose of preserving the property of the estate, which creates a lien on the assets of the estate to secure its repayment to the representative; and that the bank which loaned the money for that purpose in the present proceeding is therefore subrogated under the provisions of section 2903 of the Civil Code, to the rights of the executors and the benefits of that lien for the satisfaction of the obligation. We are of the opinion there is no merit in this contention. It is true that the representatives of an estate who advance their own money for the necessary purpose of preserving the property of the estate are entitled to be reimbursed from the assets of the estate before ordinary debts and obligations are paid. That is because of the emergency which exists and the trust nature of the funds so expended. (Sec. 1616, Code Civ. Proc.; *Estate of Hincheon*, 159 Cal. 755 [116 Pac. 47, 36 L. R. A. (N. S.) 303]; 11B Cal. Jur. 250, sec. 842; 3 Bancroft's Probate Practice, 1638, sec. 964; *Gurnee* v. *Maloney*, 38 Cal. 85 [99 Am. Dec. 352].)

In the present proceeding, however, the executors spent no money of their own to carry on the farming enterprise. They borrowed money for that purpose under the provisions of section 1577a, *supra*, for the express benefit of the estate. That money was loaned *to the estate* and not to its representatives. Subdivision fifth of that section specifi-

cally provides that "said note or notes . . . shall create no personal liability against the person so signing". Subdivision sixth of that section also provides in that regard: "Any note or notes so signed and executed shall be effectual to create a valid obligation and debt *against said estate,* . . . and shall be payable out of the funds of said estate, . . . " The language of the statute just quoted appears to answer the contentions of the appellant adversely to it. The statute in question contemplates neither subrogation nor a lien. The very heading of the section declares that the purpose to be accomplished thereby is to "borrow money upon *unsecured notes*". An examination of other provisions of the probate law as it existed at the time this indebtedness was incurred reinforces this conclusion. Sections 1528 and 1578 of the Code of Civil Procedure, which are now incorporated in sections 830 to 834 of the Probate Code, authorize the representatives of an estate to borrow money on notes to be secured by chattel mortgage, real estate mortgage or trust deed, only for specific purposes therein stated. No other means of securing a lien for a debt is specifically provided for. These sections do not include the borrowing of money for the purpose of conducting the business of a decedent.

A critical examination of the probate law and the decided cases in California furnishes no authority to support the appellant's assertion that money borrowed for the benefit of the estate under the provisions of section 1577a, *supra,* to conduct the farming enterprise of the decedent or otherwise constitutes "expenses of administration" as distinguished from ordinary debts and obligations of the estate. It follows that the unsecured indebtedness of the appellant should be classified under the fifth subdivision of section 1643 of the Code of Civil Procedure, now section 950 of the Probate Code, as an ordinary debt or obligation of the estate, and not as current expenses of administration, exactly the same as though the loan had been made to the decedent for the same purpose before her death. To hold otherwise would defeat the very spirit and purpose of the probate law which seeks to distribute the property of an estate to the heirs, legatees and creditors of the decedent as speedily and in as unimpaired a condition as possible. The appellant's construction of this statute would enable

the representatives of an estate to speculate on the success of a questionable enterprise in conducting a farm or for various other purposes at the expense of those who are entitled to the property and perchance thereby destroy the security of established debts and valid claims by creating new and subsequent obligations which would supersede the former ones as preferred claims. This would be a dangerous power to confer upon the representatives of an estate, and we are of the opinion the legislature wisely refrained from doing so. That procedure would be unfair and unjust to the heirs, legatees and creditors of the estate, and in the absence of clear statutory provisions to that effect we must assume it is not the law.

Our construction of section 1577a of the Code of Civil Procedure, as it formerly existed, is supported by an examination of the language of similar sections of the Probate Code which were subsequently enacted in 1931. Sections 830 to 834 of the Probate Code, covering the subject authorizing the borrowing of money in behalf of an estate are based substantially on the former sections 1528, 1577, 1577a, and 1578 of the Code of Civil Procedure. Section 2 of the Probate Code provides:

"The provisions of this code, so far as they are substantially the same as existing statutes, must be construed as continuations thereof, and not as new enactments."

Section 834 of the Probate Code makes it clear that the rights and remedies of creditors who procure and hold notes against the estate, secured or unsecured, subsequent to the death of a decedent, are precisely the same as though the debts were incurred during his lifetime. That section provides in that regard:

"No omission, error or irregularity in the proceedings [under this chapter] shall impair or invalidate the same or the note or notes, mortgage, pledge or deed of trust given in pursuance thereof, and the mortgagee, pledgee, or the trustee and beneficiary, their heirs and assigns, *shall have and possess the same rights and remedies on the note or notes and mortgage, pledge or deed of trust as if it had been made by the decedent prior to his death. . . ."*

*In re Donnelly's Estate,* 246 Pa. 308 [92 Atl. 306], upon which the appellant relies, together with other cited cases, may be readily distinguished from the present proceeding.

Those cases hold that persons who lend money *to an executor* for the purpose of defraying expenses of administration, "for the preservation of the estate", are entitled to be subrogated to the rights of the executor for the satisfaction of their claims prior to other regular debts and obligations of the estate. In this proceeding, however, the appellant's loan was not made to the executors, but on the contrary, pursuant to the unambiguous language of section 1577a of the Code of Civil Procedure, it was made to the estate of Mary Stewart Smith, deceased. It was made under a general provision for borrowing money to be used for the best advantage and benefit of the estate on unsecured notes. As we have previously said, money thus borrowed for the estate does not constitute "expenses of administration" as distinguished from ordinary debts and obligations of the estate, as that term is used and understood in our authorities. For the reason that the money which is involved in this proceeding did not belong to the executors, and never was advanced *by them* for conducting the farm or otherwise, they are not entitled to a lien upon the assets of the estate for reimbursement in preference to other prior valid debts and obligations of the estate, and there are no vested rights to which the appellant may be subrogated.

The order is affirmed.

Pullen, P. J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 19, 1936.