## Coleman's Estate.   Commonwealth's Appeal.

| 159 | 231 |
|-----|-----|
| 181 | 345 |
| 182 | 162 |
| 159 | 231 |
| 221 | 113 |
| 221 | 118 |

*Collateral inheritance tax—Nonresident—Real estate—Act of 1887.*

Where a testator, without lineal relatives and domiciled in another state, directs that land situated in this state shall be sold, and that his executors shall "convert the same into money, and apply the proceeds arising therefrom towards the payment" of legacies to collaterals, the proceeds of sale of such lands are not subject to collateral inheritance tax.

Argued Nov. 3, 1893.   Appeal, No. 136, Oct. T., 1893, by the Commonwealth of Pennsylvania, from decree of O. C. Allegheny Co., Nov. T., 1892, No. 36, distributing estate of Julia Coleman, deceased.   Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Exceptions to adjudication.

From the record it appeared that on Sept. 16, 1889, Julia C. Coleman died domiciled in the state of New York, without lineal heirs, leaving a will by which she directed as follows:

"6. I direct my executors, hereafter named, and the survivors and survivor of them, and their, or his successors, to sell and convey all the rest, residue and remainder of my real estate, of which I shall die seized, possessed, or entitled to . . . . and I hereby direct them or him to convert the same into money, and apply the proceeds arising therefrom towards the payment of the legacies hereinafter mentioned."

Some of the land included in the residuary clause was in Allegheny county.   The executors sold this land and out of the proceeds the commonwealth claimed payment of collateral inheritance tax.   No appeal was taken from appraisement.

The opinion of the court below was as follows by HAWKINS, P. J.:                                    .

"The simple question raised in this case is whether the fund for distribution here is liable for collateral inheritance tax.   The material facts are these:

"Julia C. Coleman died domiciled in the state of New York, leaving a will, in which she directed her executors 'to sell and convey all the rest, residue and remainder' of her real estate and 'convert the same into money and apply the proceeds aris-

ing therefrom' toward the payment of certain legacies given to collaterals. Included in this residue is real estate situated in this commonwealth, part of which these accountants have sold under said power, and the proceeds are here for distribution. Between the dates of Julia C. Coleman's death and this sale, the register made an appraisement of the land for the purpose of collateral inheritance tax, and from that appraisement no appeal has been taken. The register now claims the tax out of this fund, and the accountant denies its liability, because the legatees 'acquire nothing more under the will than a right to receive a sum of money out of the proceeds of sale ; a mere chose in action ; a claim of strictly personal character.'

" The solution of the question involved in this case turns mainly upon the application of the maxim that the situs of personal property follows the domicile of the owner. It was said in Small's Est., 151 Pa. 1, that as a general rule intangible personal property of a nonresident, such as bonds, mortgages and other choses in action, is governed, as to its situs, by the fiction of law above noticed, and hence such property is not subject to collateral inheritance taxation under the act of 1887, because not situated in this state. Some species of personal property, it is true, when used in carrying on business or for other particular purposes, may have an actual as distinct from a legal situs ; but the local character of the use takes it out of the operation of the rule. And of this Small's Estate is of itself a striking illustration. Not only was the ' thing ' given employed in a business which was by its nature localized, but the manifest intent of the testator was that it should remain in this state. The bequest was specifically of testator's interest, including ' all the property, real and personal, notes, stocks, bonds and accounts,' in a limited partnership organized under the laws, and having its principal place of business in this state. The value of the property depended largely upon its continuance here. There was no reason for its conversion and transmission to the testator's domicile, and it was given to the surviving partners as such in specie. The facts plainly made an exception to the general rule. The actual situs was here, and liability to the tax followed. It is urged upon behalf of the commonwealth that this case rules the present ; but the facts differ in material respects. The gift here was of an interest in a fund whose distribution belonged to the domicile of the donor.

" It was said in Bittinger's Ap., 129 Pa. 338, that the collateral inheritance tax was not a succession, but a direct tax upon the ' thing ' given in the hands of the donees. What was the ' thing' given to these legatees ? The answer is in Miller v. Com., 111 Pa. 321, in which it was held that where a testator domiciled in this state orders land situated without to be sold to pay pecuniary legacies, these legacies will pass to the legatees as money, subject to the domiciliary law, and consequently to the collateral inheritance tax. ' Under all the decisions it cannot be questioned,' said the court, ' that the third clause of (sale under the) will operated as a conversion of the residuary real estate into personalty efficacious from the moment of testator's death. . . . Had there been a mere direction to sell, as was the case in Drayton's Ap., 61 Pa. 172, we should have felt bound to hold there was no conversion, and that as the land was situated in another state it would not be subject to collateral inheritance tax.' The facts here are precisely similar, and should work the same result. The thing given was not land, but an interest in its proceeds. If bonds, notes, stocks, bonds and mortgages be intangible personal property, surely this is. The administration here being ancillary, the legatees have no status. Local debts and expenses having been paid, it is the sole duty of the administrator to transmit the balance to the domicile for administration. The collateral tax is imposed only on what remains for distribution after all the expenses of administration, debts and rightful claims of third parties, domestic as well as foreign, have been paid or provided for ; it is only the net balance that is liable. How, then, is it possible to impose a tax on this fund when it has never been ascertained judicially how much or whether any of it will go to the collateral legatees ? Who can tell how much of the fund may be successfully claimed by creditors and others as against the legatees ? The court of the domicile is the only tribunal that can determine how much will ultimately go to them : Orcutt's Ap., 97 Pa. 179. Suppose the whole of the fund should be required for the payment of claims of domiciliary creditors, a tax imposed here now would be upon a class not within the purview of our law and unjust. Suppose the legatees should be entitled to receive only part of the fund upon which the tax is imposed here, the expense of recovering the excess would be a burthen. So, too, the impo-

sition of a tax here would result in the hardship of a double tax. It is apparent, therefore, that the imposition of a tax on the fund here would not only be unwarranted by the act of 1887, but would work injustice to these beneficial parties.

But in addition to these reasons, there is a question of public policy involved which is worthy of consideration. The rule that personal property follows the domicile of the owner is internationally recognized and observed as being founded in convenience (2 Wm. Exrs., 1515), and a disregard of it here may react to the prejudice of our own citizens.

" The gift to these collaterals being, then, manifestly an interest in intangible personal property, is governed by the domiciliary law, and consequently cannot be taxed for collateral inheritance in this state : Miller v. Com., supra.

" It has been suggested that a result from the rule here indicated will lead foreign testators to order the sale of their lands located here with a view to avoid liability for payment of collateral inheritance tax. But Miller v. Com., supra, will obviously have the same effect on testators domiciled here, and the one class will practically equalize the other and the state lose nothing.

" It also follows logically that the assessment of the land owned by the testator as land by the register was without authority of law ; it was not given to these collaterals ; and the assessment was, therefore, void."

*Error assigned* was (1) in holding that the lands of testatrix in Pennsylvania were not subject to collateral inheritance tax ; (2) in not holding failure to appeal from appraisement conclusive.

*R. B. Petty, W. U. Hensel,* attorney general, with him, for appellants, cited : Act of May 6, 1887, P. L. 79 ; Com. v. Smith, 5 Pa. 142; Kintzing v. Hutchinson, 7 W. N. 226 ; Short's Est., 16 Pa. 63 ; Small's Est., 151 Pa. 1; Hoyt v. Com., 23 N. Y. 224 ; Dos Passos on Collateral Inheritance, p. 105 ; Avery's Est., 34 Pa. 204 ; Bittenger's Est., 129 Pa. 344; Stinger v. Com., 26 Pa. 422 ; Williamson's Est., 153 Pa. 508 ; Act of March 21, 1806, 4 Sm. L. 332 ; Beltzhoover Borough v. Gollings, 101 Pa. 293 ; Green v. Van Buskirk, 7 Wall. 150 ; Com.

v. Del., L. & W. R. R., 145 Pa. 103; 1 Desty on Taxation, p. 324; Cooley on Taxation, 373; Williams v. Board of Supervisors, 78 N. Y. 567; Tappan v. National Bank, 19 Wallace, 490.

*H. A. Miller, Lazear & Orr* with him, for appellees, cited : Miller v. Com., 111 Pa. 321; Bittinger's Est., 129 Pa. 338; Orcutt's Ap., 97 Pa. 179; Allison v. Wilson, 13 S. &. R. 330; Hess v. Shorb, 7 Pa. 231; Evans's Ap., 63 Pa. 183; Brolaskey v. Gally, 51 Pa. 509; Jones v. Caldwell, 97 Pa. 42; Morrow v. Brenizer, 2 Rawle, 185; Com'th's Ap., 11 W. N. 492; Kintzing v. Hutchinson, 7 W. N. 226; Act of May 6, 1887, P. L. 79; Act of April 10, 1849, P. L. 571; Del Busto's Est., 23 W. N. 111; Bennett's Est., 20 Pitts. L. J. (N. S.) 316; Com. v. Smith, 5 Pa. 142; Stinger v. Com., 26 Pa. 422.

PER CURIAM, December 30, 1893 :

We have fully considered this case with special reference to the several specifications relied on by the appellant and are satisfied that there is no error in the decree or in the legal conclusions upon which it is based. All that can be profitably said on the questions involved will be found in the clear and convincing opinion of the learned judge of the orphans' court. For reasons therein given the decree should be affirmed.

Decree affirmed and appeal dismissed with costs to be paid by the appellant.