### UNITED STATES v. SECURITY–FIRST NAT. BANK OF LOS ANGELES et al. Equity No. 838–RJ.

District Court, S. D. California, Central Division.

Nov. 20, 1939.

Ben Harrison, U. S. Atty., E. H. Mitchell, Asst. U. S. Atty., and Eugene Harpole, Sp. Atty. for the Treasury Department, all of Los Angeles, Cal., for the United States.

M. J. Rankin, S. I. Colver, and Milo V. Olson, all of Los Angeles, Cal., for defendants Security-First National Bank of Los Angeles and Los Angeles Trust & Safe Deposit Co.

Arch H. Vernon, Earl E. Johnson, and Gilbert E. Harris, all of Los Angeles, Cal., for defendants Title Insurance & Trust Co. and Title Guarantee & Trust Co.

JENNEY, District Judge.

This is an action by the United States of America to collect federal estate taxes and interest thereon, through the enforcement of liens against certain properties alleged to have been acquired from the estate of decedent by defendants, after the government lien had attached.

Decedent, Alla Wheeler Hallett, died February 13, 1926, owning all of the real property involved herein. It is agreed by all parties that the estate was subject to a federal estate tax, and that a return should have been filed by February 13, 1927. No return was filed however, until February 2, 1933, nearly seven years after decedent's death. Upon the filing of this return, the tax in question was assessed, appearing in the April and June, 1933, assessment lists. On August 11, 1933, notice of lien was filed by the Collector of Internal Revenue in Los Angeles County in accordance with the provisions of Section 3186, R.S., 26 U.S.C. A. § 1562.

In the meantime, the estate had borrowed money, securing the same by a deed of trust, upon that part of its property hereinafter referred to as "Parcel I". Default having occurred in repayment of the loan, the deed of trust was foreclosed, and Parcel I was conveyed, on December 21, 1937, by trustee's deed to defendant, Title Insurance and Trust Company of Los Angeles.

The legal question first presented in connection with this defendant is this: Did the lien of the government take effect, as against a bona fide encumbrancer for value, as of the date of death, February 13, 1926, or as of the date of recordation, August 11, 1933. If the lien is held to have taken effect at the earlier time, it is conceded that the Government is entitled to prevail over defendant, Title Insurance and Trust Company. If the later date is determined to be controlling, it is conceded that this defendant acquired Parcel I free and clear of the government's lien.

Prior to the recordation of the government's lien, which occurred on August 11, 1933, the estate borrowed additional funds, in the amount of $10,000, giving as security therefor a mortgage upon property hereinafter referred to as "Parcel II". The proceeds of this loan are alleged to have been spent for the most part in paying expenses of administration and charges against the estate. The exact amounts so used will be indicated later in this opinion.

Subsequent to the recordation of the Government lien, and on September 4, 1934, this mortgage loan on Parcel II was refinanced and additional funds, in the amount of $6,000, were borrowed from defendant Security First-National Bank of Los Angeles, a deed of trust on Parcel II being given as security therefor. These additional funds, likewise, were allegedly spent to defray expenses of administration and charges against the estate. This latter loan was never repaid, and on January 15, 1937, a sale was had under the deed of trust; at which sale Parcel II was bought in by defendant Security-First National Bank.

The general legal issue presented as to defendant Security-First National Bank, is this: Was the bank's property interest, as purchaser at the sale, taken free and clear of the Government lien, because of the use made by the estate of the borrowed funds. Further facts will be developed and the subsidiary issues on this part of the case will be stated later in this opinion.

The court will now consider the first question involved, namely, the liability of the Title Insurance and Trust Company. Section 315(a) of the Revenue Act of 1924, 43 Stat. 312 (which for all purposes here was the same as Section 209 of the Reve-

nue Act of 1916, 39 Stat. 780 and Section 409 of the Revenue Acts of 1918 and 1921, 40 Stat. 1100 and 42 Stat. 283), provided: "Unless the tax is sooner paid in full, it shall be a lien for ten years upon the gross estate of the decedent, except that such part of the gross estate as is used for the payment of charges against the estate and expenses of its administration, allowed by. any court having jurisdiction thereof, shall be divested of such lien. If the Commissioner is satisfied that the tax liability of an estate has been fully discharged or provided for, he. may, under regulations prescribed by him with the approval of the Secretary, issue his certificate, releasing any or all property of such estate from the lien herein imposed."

The lien arising thereunder was held by the courts to take effect as of the date of decedent's death. Hertz v. Woodman, 218 U.S. 205, 223, 30 S.Ct. 621, 54 L.Ed. 1001; Page v. Skinner, 8 Cir., 298 F. 731, at page 732. This construction was widely recognized and observed.

■ United States v. Ayer, 1 Cir., 12 F.2d 194, 5 Am.Fed.Tax R. 5935. Congress, presumably aware of this judicial construction of its enactment, and having subsequently re-enacted the statute without alteration, is deemed to have placed its approval upon the interpretation given by the courts, and to have made such judicial construction part of the law itself. The Abbotsford, 98 U.S. 440, 25 L.Ed. 168; United States v. Ryan, 284 U.S. 167, 52 S.Ct. 65, 76 L.Ed. 224; Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536.

■ Defendant contends that the decision, fixing the time of the attachment of the lien as of the date of decedent's death, did so only with respect to the estate itself or the beneficiaries thereof, and did not deal with a situation where bona fide encumbrancers for value were involved. There are no authorities cited supporting this contention, and the court feels that it is unsound. The statute is broad and general, and its meaning—that the lien attaches as of the date of decedent's death— seems clear. To say that this lien attaches at. one time as against the estate and beneficiaries (at decedent's death), and at another time as against third parties (perhaps at time of recordation), would ignore the essential nature of liens. A tax lien can arise but once. It can only have one effective date of beginning. (Whether,

once it has attached, it can prevail over conflicting claims against the same property is an entirely different question.) Manifestly such a construction would read into the tax statute an unwarranted exception based upon reasons of so-called policy— considerations which are more properly cognizable by the legislature than the courts. Tax laws may not be rewritten by courts simply because they may be dissatisfied with the statutes as drafted by Congress.

This court must hold, therefore, that the lien, arising by virtue of Section 315(a) of the Revenue Act of 1924 attaches as of the date of decedent's death to all property in the estate and as against all persons.

Defendant's next contention is this: Since Sec. 3186 of the Revised Statutes, as amended in 1913, 26 U.S.C.A. 1560–1562, was in effect in 1924 when the Revenue Act here pertinent was passed, Congress must have intended to have Sec. 315(a) modified by and interpreted in the light of Sec. 3186. Thereby the estate tax lien would be no different from the general tax lien of Sec. 3186—which lien arises when the assessment list is received by the Collector, and is only valid as against a mortgagee, purchaser or judgment creditor after due recordation.

■ Congress, presumed to know the law, undoubtedly had Section 3186 in mind when it passed Section 315(a). Yet no specific reference to the former appears in the latter. Under such circumstances; if possible, it is the duty of a court to construe the two acts together, avoiding repugnancies and implied repeals. See Penziner v. West American Finance Co., 10 Cal.2d 160, at page 176, 74 P.2d 252. Defendant, recognizing this proposition, insists that although Section 315(a) is to be construed as fixing the time its lien arises, that section is silent as to when its lien shall become valid as against mortgagees, purchasers and judgment creditors. Hence, they contend the time fixed by Section 3186—i. e., the date of recordation—must be read into Section 315(a) for the sake of consistency, and both liens would be valid as against bona fide encumbrancers for value only after proper recordation. This construction is urged as one which will prevent "secret liens", a situation which Congress is asserted to have disapproved in 1913, when it amended Section 3186 to eliminate what was theretofore a secret lien, by requiring recordation.

■ Defendant's argument tacitly assumes that there can be but one lien to enforce a tax in favor of the Government. However, there is no limit to the number of remedies Congress, in its discretion, may place at the disposal of the Commissioner for the enforcement of taxes. Clearly Congress, with complete propriety, may provide one lien to protect its rights pending the assessment of a tax, and another to enforce the collection thereof, once assessed. In any event, however unwise a secret lien may be, the remarks of the court in United States v. Curry, D.C., 201 F. 371, 374, are pertinent to the situation here even as they were when in 1913 the same problem arose before the amendment to Section 3186:

"It would seem that by a comparatively slight change of the statute law the rights of the United States could be sufficiently protected without endangering the interests of other persons. The collector of internal revenue at the time he makes demand upon the taxpayer might be required to transmit a copy of the demand to some office in which judgments and other recognized liens upon real estate are recorded and the records of which are consequently carefully examined by conveyancers. Whether public policy does or does not require that section 3186 shall be repealed or amended in some such way as above suggested is a question of policy for Congress. The present state of the law was called to its attention at least six years ago. Part 1, Proceedings American Bar Ass'n 1906, p. 598.

·"It has, however, not taken any action. The courts must enforce the law as they find it."

■ In our case Congress could have made the law otherwise. It may yet do so. But at present it seems content to let the clear general terms of Section 315(a), without any exceptions, stand unchanged and as they have read for twenty-three years. No matter how unfortunate the result may seem through the refusal of the court to qualify the broad terms of a general statute, the task of legislation must not be assumed by the courts. Crooks v. Harrelson, 282 U.S. 55, at page 60,. 51 S.Ct. 49, 75 L. Ed. 156.

Section 315(a), although broad and sweeping, affords no proper basis for this court's decision that Congress intended it to be other than broad and sweeping. Merely because some might think it wiser to require recordation of this lien as well as of the lien arising under Sec. 3186, this court is not justified in ruling that Congress intended such a result. It may well be that Congress, looking at the question from the standpoint of collecting revenue efficiently, deemed it best to leave section 315(a) unchanged—a broad, unqualified lien law, requiring all persons dealing with estates to investigate at their peril the situation in regard to federal estate taxes. While some estates in the process of liquidation might be handicapped thereby, the law was expressly worded to permit sales of property out of the estate when the tax, though unpaid, had been "provided for". Such a law has the element of certainty to recommend its wisdom, and relieves the Collector of the obligation of scurrying around to notify all who might possibly be interested parties, of the claims of the Government. Congress may well have deemed such reasons sound.

■ The law, as it now stands, puts the burden upon the estate of clearing itself of estate tax liability—a situation not so unfair as it may seem at first glance. Under the procedure of Section 3186, the Collector knows the date of the inception of that lien, since it takes effect as of the date the assessment list is received by his office. Hence he is able to give notice thereof. Under the provisions of Section 315(a), however, the Collector has no way of learning that a tax is due, short of an extensive investigation, the expense of which Congress apparently did not feel justified in authorizing, until some type of return is made by the estate's legal representative. Only then does the Collector learn the facts and the date of decedent's death. In the case at bar, the return was not filed until seven years after decedent's death. Should the Government be bound at its peril to protect its interests during all this period, when it has been kept in ignorance of facts well known to the representatives of the estate and by them revealed to purchasers and encumbrancers dealing with the estate? Is it unreasonable for Congress to hesitate to saddle the Government with such a burden? Certainly this statute cannot be judicially revised, when under the circumstances, Congress has definitely placed upon the estate the duty of clearing itself of estate tax liability, or of providing therefor before assets are transferred or encumbered.

However wise or unwise the answer given by Congress to these questions, this court is constrained to say that Congress

has answered them, and done so in the active exercise of its legislative functions. Reformation and revision of sweeping tax laws may properly be sought in the legislative halls, but not in the courts. This court, therefore, holds that the lien of the Government attached as of February 13, 1926 to all property in the estate of Alla Wheeler Hallett, and that it is good as against subsequent encumbrancers.

This disposes of the first issue in the case and fixes liability upon all defendants, unless it can be shown that all or part of the property was subsequently transferred free from this lien by virtue of the clause in Section 315(a), exempting from the lien "such part of the gross estate as is used for the payment of charges against the estate and expenses of its administration, allowed by any court having jurisdiction thereof". Counsel for the Government insist that if this exception is to be relied upon, the allowance by the probate court must have preceded the actual expenditure. No statute or case is submitted in support of this contention; nor does Section 315(a) itself specify the time within which the approval of the court must be secured.

■■■ The purpose of the estate tax law was not to regulate the administration of probate estates, but rather to impose a tax on the right to transmit property at death. It is therefore clear that, except for necessary provisions as to measuring and collecting the tax, the manner of handling decedents' estates is controlled by state and not federal law. Congress being silent on the matter, what constitutes due approval by a probate court in California of expenditures made by a California executor must be determined by California law.

In the case at bar, the Government concedes that certain expenditures were approved by the Superior Court of Los Angeles County; that that court had jurisdiction over the estate under California law; that although such approval was not secured until after the sums were dispersed, the approval given was, nevertheless, granted in accordance with the usual procedure in such matters as prescribed in the Probate Code of California and the decisions construing the same.

■■■ It, therefore, appears that those expenditures in this case which defendants can show have constituted payment of expenses of administration and charges against the estate, and which were approved by the Superior Court of Los Angeles County, come within the meaning of the exception in Sec. 315(a). This conclusion seems sound so long as the expenditures do not amount to distribution. A decision to the effect that approval must precede payment might impose so much red tape upon legal representatives and courts as to preclude efficient administration of decedents' estates and might swamp the courts with innumerable hearings on trivial matters. The California rule avoids this congestion, and we must follow it, since Congress has indicated no other.

■■■ Counsel for the Government point out that it was not the land itself, but only funds raised by encumbering the land, which were actually used to make such payments. This court however, finds from an examination of the stipulation of agreed facts, and the supplement thereto, that proceeds from the sale of the land have been sufficiently traced through the bank account of the estate to show payment of various admitted obligations, so that, applying the well-established principles of equitable conversion, the land may, with propriety, be said to have been used to defray expenses of administration and charges against the estate. In re Sanford, 188 Iowa 833, 175 N.W. 506; Land Title & Trust Co. v. South Carolina Tax Comm'n, 131 S.C. 192, 126 S.E. 189, 42 A.L.R. 417; Coleman's Estate, 159 Pa. 231, 28 A. 137; Shoenberger's Estate, 221 Pa. 112, 70 A. 579, 19 L.R.A.,N.S., 290, 128 Am.St.Rep. 737.

■■■ We come, therefore, to a consideration of whether each item of expenditure was, in fact and in law, "an expense of administration" or "a charge against the estate". Preliminarily, it should be noted that the renewal of the trust deed on Parcel II was effected September 7, 1934, after the notice of lien under Sec. 3186 had already been filed for recordation by the Collector of Internal Revenue on August 11, 1933. The additional $6,000 loaned at that time on the security of Parcel II was, therefore, subject to the lien of Sec. 3186, since there is no provision in that section exempting from its operation property used to defray expenses of administration or to meet charges against the estate. This is so, regardless of whether or not the additional $6,000 loaned on the security of Parcel II came within the exception contained in Section 315(a) of the Revenue Act of 1924, which, as indicated heretofore in this opinion, creates an entirely separate and dis-

tinct lien from that arising under Section 3186.

Consequently, all of the items set forth in detail on page 11 of the Stipulation of Agreed Facts in the total amount of $6,-000, cannot be excepted from the operation of the Government's lien. Our consideration is, therefore, limited to the items of expenditure traceable to the $10,000 initially loaned on the security of Parcel II.

Of these remaining items, certain expenditures—such as funeral expenses and doctor bills incurred during decedent's last illness—were never approved by the probate court at any time. However proper or necessary such payments may have been, they do not come within the wording of the exception contained in Section 315(a), and hence cannot escape the effect of that lien. As stated before, this court cannot rewrite tax laws to suit its own ideas of propriety or those of counsel. If the result reached here seems harsh, its effects can readily be avoided by the simple expedient of having all such items approved in due course by the proper court, so that the provisions of Sec. 315(a) may be complied with, and some evidence of the reasonableness of the expenses incurred and charges paid may be shown to the federal tax authorities.

Since Sec. 315(a) is silent as to what constitutes proper expenses and charges, and since its requirement of proper court approval casts the burden of examining the correctness of the items upon the state court, state law governs. Erie Ry. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487.

The Stipulation of Agreed Facts shows that attorneys' fees in the sum of $1,000 were paid. This item was approved by the state court, and was, under California law, considered as an expense of administration. Probate Code, § 911; Estate of England, 214 Cal. 298, 5 P.2d 428; Estate of Graham, 187 Cal. 222, 201 P. 456, 18 A.L.R. 631; Joost v. Bennett, 123 Cal. 424, 56 P. 43.

Several items of taxes and assessments, accruing subsequent to the death of the decedent and paid by the administratrix, were duly approved by the probate court. These items, totaling $6,725.00, were proper charges against and expenses of the estate under California law. People v. Olvera, 43 Cal. 492; Estate of O'Connor, 200 Cal. 646, 650, 254 P. 269; Estate of Freud, 131 Cal. 667, 63 P. 1080, 82 Am. St.Rep. 407; Weinreich v. Hensley, 121 Cal. 647, 54 P. 254.

The case of Estate of Smith, 1936, 16 Cal.App.2d 239, 60 P.2d 574, relied on by the Government and involving only unsecured obligations, is not controlling where, as here, principles of equitable conversion, soundly applied, demonstrate that the proceeds from the hypothecation of the land itself were in fact used to pay off properly approved charges and expenses.

Counsel will prepare findings of fact and conclusions of law in accordance with the foregoing opinion, and on the basis thereof, will recompute the amount of tax, so that judgment may be entered for that sum.

It is so ordered.