William D. KLEINE and wife, V. Ann Kleine, and Brown Oil Tools, Inc., Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 74–4065.

United States Court of Appeals, Fifth Circuit.

Sept. 23, 1976.

William Monroe Kerr, Midland, Tex., for plaintiffs-appellants.

James E. Clark, U. S. Atty., San Antonio, Tex., J. W. Littlefield, Refund Section, Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Chief, Appellate Section, Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

Before GODBOLD and RONEY, Circuit Judges, and FREEMAN, District Judge.

RICHARD C. FREEMAN, District Judge.

Section 6324(a)(1) of the Internal Revenue Code of 1954, 26 U.S.C. § 6324(a)(1), imposes a pre-assessment tax lien on the gross estate of any decedent whose proper-

ty is subject to the estate tax. The special estate tax lien attaches automatically at death to all property in the decedent's gross estate. This appeal presents certain novel questions left unresolved by the decision of this court in *Northington v. United States,* 475 F.2d 720 (5th Cir. 1973)[1] concerning the circumstances in which property, otherwise subject to the lien of § 6324(a)(1), may be divested of the lien by operation of law prior to the payment of the estate tax.

The decedent, J. E. Jones, died testate on October 31, 1964. Decedent's will was admitted to probate in Midland County, Texas, and letters testamentary were issued to his son, Philip McRae Jones, who was named in the will as the independent administrator of the estate, pursuant to § 145 of the Texas Probate Code. 17A Vernon's Texas Civil Stat.Ann. § 145.[2]

▮ The Texas system of independent administration authorizes an executor to proceed with the administration of an estate, without requiring court approval of specific dispositions, once the "will has been probated, and the inventory, appraisement and list . . . [of claims] has been filed by the executor and approved by the court." 17A Vernon's Texas Civil Stat.Ann. § 145.

Moreover, the independent executor is authorized to "receive presentation of and classify, allow, and pay, or reject, claims against the estate" in accordance with the order of priority and classifications prescribed in the Texas Probate Code "to the same extent and result as if his actions had been accomplished in, and under orders of the court." 17A Vernon's Texas Civil Stat. Ann. § 146.[3] In sum, the independent system of administration is designed to permit an independent executor to effectuate the distribution of the estate free of judicial supervision with a minimum of cost and delay. *See Burke v. Satterfield,* 525 S.W.2d 950 (Tex.Sup.1975).

At his death, the decedent owned a certain parcel of residential real property and a parcel of commercial property, both of which were included in his gross estate. On August 30, 1965, the independent executor sold the residential property, formerly owned by his father, to two of the appellants herein, Mr. and Mrs. Kleine, for $35,-000.00; two days later, he deposited a check in the amount of $31,286.94, representing the net proceeds of the sale of the residential property into an account for the estate maintained at the First National Bank of

---

1. *Northington v. United States* involved another group of purchasers of property from the estate of the decedent herein, J. E. Jones. In *Northington,* the district court considered transactions almost identical to those *sub judice,* wherein the independent administrator sold property of the decedent, deposited the funds in the estate's bank account and then drew a check payable to the Jones Exploration Company a sole proprietorship operated by the independent executor. The district court held that the purchasers therein had failed to satisfy the "tracing" requirements of § 6234(a)(1); that is, they failed to persuasively prove that the proceeds of the sale of the estate property were actually used to satisfy the obligations of the estate, i. e. either "charges against the estate" or "expenses of administration." On appeal, this court affirmed the district court's decision, refusing to disturb the factual findings of the district court. However, the instant case is in a different procedural context, in the sense that the lower court granted appellee's motion for summary judgment, ruling as a matter of law that the instant expenditures were not approved by a court of competent jurisdiction and that general and unsecured obligations of the estate are not "charges against the estate" or

"expenses of administration" for purposes of the lien divestiture features of § 6324(a)(1).

2. Section 145. Independent Administration.

Any person capable of making a will may provide in his will that no other action shall be had in the county court in relation to the settlement of his estate than the probating and recording of his will, and the return of an inventory, appraisement, and list of claims of his estate. When such will has been probated, and the inventory, appraisement, and list aforesaid has been filed by the executor and approved by the court, as long as the estate is represented by an independent executor, further action of any nature shall not be had in the court except where this Code specifically and explicitly provides for some action in the court.

3. Appellants also contended that the special estate tax lien was no longer enforceable since over ten years had passed since the date of decedent's death. *See United States v. Cleavenger,* 517 F.2d 230 (7th Cir. 1975). However, appellants voluntarily withdrew that issue as a ground for appeal.

Midland, Texas. Thereafter, on October 14, 1965, the executor issued a check drawn on the estate's account in the amount of $30,000.00 to the Jones Exploration Company, an individual proprietorship operated by the executor, that had formerly been a partnership operated by decedent and his son, the executor. In a similar series of transactions, the executor sold the commercial property to appellant Brown Oil Tools, Inc. for $75,000.00 on April 30, 1965, and deposited the net proceeds in the estate's bank account. On that same date, the executor issued a check drawn on the estate's account for $75,000.00 payable to the Jones Exploration Company representing the proceeds of the sale.

On January 24, 1966, the independent executor filed a federal estate tax return reflecting a total estate tax liability of $392,347.31, of which certain amounts still remain unpaid and owing by the estate.

On June 16, 1972, in order to ensure the payment of the estate tax, the Internal Revenue Service levied upon both the residential and commercial properties and attempted to sell the properties in order to collect the estate tax due, pursuant to its authority under § 6331(a) of the Internal Revenue Code, 26 U.S.C. § 6331(a). Thereafter, the purchasers of the property, appellants herein, brought the instant action in federal court seeking to enjoin the United States from enforcing the federal tax lien. The district court denied appellants' request for injunctive relief and granted appellee's motion for summary judgment, concluding, as a matter of law, that (1) the proceeds of the sale of the properties *sub judice* were not utilized to pay debts that were "charges against the estate" nor (2) were the sales "allowed by any court having jurisdiction thereof" within the meaning of § 6324(a)(1).

Accordingly, the district court dismissed the action, concluding that the property was not divested of the federal estate tax lien prior to the levy and seizure of the property by the United States.

At the outset, we note that appellants herein admit that the proceeds of the sale of both pieces of property were commingled with other funds in possession of the Jones Exploration Company, and that neither the executor nor the appellants have records that carefully "trace" in detail the purposes for which the funds were utilized. *See Northington v. United States, supra.* Cf. *United States v. Security-First National Bank,* 30 F.Supp. 113 (S.D.Cal.1939), *appeal dismissed,* 113 F.2d 491 (9th Cir. 1940).[4] Similarly, appellants do not argue that the sale of the properties and the disposition of the proceeds thereof was pursuant to a court order or with the approval of the court, nor do they contend that the executor applied for and received a discretionary release of the estate tax lien from the Internal Revenue Service, pursuant to § 6325 of the Internal Revenue Code.

Thus, the instant appeal presents two distinct legal questions pretermitted by this court in *Northington v. United States, supra,* 475 F.2d at 722 n. 1: (1) whether the general obligations of the estate which were allegedly satisfied by the proceeds of the sale were in themselves "charges against the estate" or "expenses of administration" within the meaning of § 6324(a)(1), and (2) whether the obligations which were purportedly satisfied by the proceeds of the sale were, in the context of the Texas system of independent administration, "allowed by any court having jurisdiction thereof" within the meaning of § 6324(a)(1).[5]

4. Section 146. Payment of Claims and Delivery of Exemptions and Allowances.

An independent executor, in his administration of an estate, although free from the control of the court, shall nevertheless, independently of and without application to, or any action in or by the court, receive presentation of and classify, allow, and pay, or reject, claims against the estate in the same order of priority, classification, and proration prescribed in this Code, and set aside and deliver to those thereto exempt property and allowances for support, and in lieu of homestead, as prescribed in this Code, to the same extent and result as if his actions had been accomplished in, and under orders of, the court.

5. In this respect, appellants admit that "they can only prove that it took all of the funds to which the estate had access, including Appel-

Section 6324, the special estate tax lien and divestment statute, provides as follows:

(a) Liens for estate tax—Except as otherwise provided in subsection (c)—

(1) Upon gross estate.—Unless the estate tax imposed by chapter 11 is sooner paid in full, or becomes unenforceable by reason of lapse of time, it shall be a lien upon the gross estate of the decedent for 10 years from the date of death, *except that such part of the gross estate as is used for the payment of charges against the estate and expenses of its administration, allowed by any court having jurisdiction thereof, shall be divested of such lien.*

26 U.S.C. § 6324(a)(1) (emphasis supplied).

Appellants' contention that the property *sub judice* was automatically divested of the special estate tax lien pursuant to § 6324 is two-fold. In the first instance, appellants contend that under Texas law, an independent executor is expressly empowered to conduct the administration of the estate and allowance of claims "to the same extent and result as if his actions had been accomplished in, and under orders of, the court," 17A Vernon's Texas Civil Stat. Ann. § 146, and that the independent administrator may, without court order, do or perform any act which any ordinary executor or administrator may perform only pursuant to court order. *Burke v. Satterfield, supra. First State Bank of Stratford, Texas v. Roach,* 124 F.2d 325 (5th Cir. 1941); *Austin v. United States,* 116 F.Supp. 283 (S.D.Tex.1953). Thus, appellants conclude that in the specialized context of the Texas system of independent administration, approval and allowance of any claims by the independent executor constitutes "allow[ance] by any court having jurisdiction thereof" for purposes of automatic lien divestiture within the meaning of § 6324(a)(1). We disagree.

The express language of § 6324(a)(1) manifests the intent of Congress to interpose an independent and neutral judicial evaluation of claims as a prerequisite to any divestiture of the special estate tax lien in order to protect the right and ability of the Service to collect the estate tax. Thus, Congress expressly limited the applicability of the automatic divestiture provisions to situations where property in the gross estate was used to satisfy charges against the estate and expenses of administration *and* where such expenditures were "allowed" by a court of competent jurisdiction. *United States v. Security-First National Bank, supra,* relied upon by appellants does not require a contrary result. In that decision the court considered certain peculiarities in the manner of probate administration recognized by California law and held, in the first instance, that "what constitutes due approval by a probate court in California of expenditures made by a California executor must be determined by California law;" *Id.* 30 F.Supp. at 118. However, the court did not dispense with the requirement that the payment be "allowed" and dealt merely with the question of the appropriate timing for such approval, stating:

". . . Counsel for the Government insist that if this exception is to be relied upon, the allowance by the probate court must have preceded the actual expenditure. No statute or case is submitted in support of this contention; nor does [§ 6324(a)(1)] itself specify the time within which the approval of the court must be secured."

*Id.*

In fact, the court expressly held that only those expenditures which defendants "can show have constituted payment of expenses of administration and charges against the estate, *and* which were approved by the Superior Court of Los Angeles County"

---

lants' purchase money payments, to pay estate debts, liabilities, taxes, including estate and inheritance taxes, and expenses of administration . . . and that such could not have been paid without the purchase price funds afforded the estate by the Appellants." However, they contend that the proceeds of the sale were used to satisfy the general obligations of the estate, which they contend constitute "charges against the estate" or "expenses of administration" within the meaning of § 6324(a)(1).

came within the estate tax lien divestiture provisions, and that payments for "funeral expenses and doctor bills incurred during decedent's last illness . . . [h]owever proper or necessary" did not come within the exceptions because they "were never approved by a probate court at any time." *Id.* at 118–19 (emphasis supplied). Section 146 of the Texas Probate Code provides that the independent executor may "receive presentation of and classify, allow, and pay, or reject, claims against the estate . . to the same extent and result as if his actions had been accomplished in, and under orders of, the court." 17A Vernon's Texas Civil Stat.Ann. § 146. Undoubtedly, the underscored language grants the independent executor the legal *authority* to act as the probate court would under comparable circumstances; it does not, however, make such acts, *ipso facto,* the equivalent of judicial approval within the contemplation and meaning of § 6324(a)(1) for federal estate tax purposes.

 Appellants have also argued that this construction of the requirement that a specific disposition be "approved" by a court of competent jurisdiction infringes upon and unduly interferes with the operation of the Texas probate system, and that "the purpose of the estate tax law [is] not to regulate the administration of probate estates, but rather to impose a tax on the right to transmit property at death." *United States v. Security-First National Bank, supra,* at 118. In particular, appellants assert that not only is the independent executor authorized to approve the specific disposition of property under Texas law, but that, as a consequence of this authority, the independent administrator is foreclosed from seeking approval of claims by a probate court or any other Texas court. Section 145 of the Probate Code does provide that once the will has been probated and the probate court has approved the inventory, appraisement, and list of claims, "further action of any nature shall not be [held] in the [probate] court except where [the] Code specifically and explicitly provides some action in the court." 17A Vernon's Texas Civil Stat.Ann. § 145. In construing

that section, the Texas courts have uniformly held that as long as an estate remains in the hands of and under the control of the independent executor, the *probate* court lacks jurisdiction to consider and approve claims against the estate. *E. g., Bryan v. Bryan,* 477 S.W.2d 705 (Tex.Civ. App.1972); *First State Bank of Stratford, Texas v. Roach, supra;* *Carter v. Brady,* 423 S.W.2d 946 (Tex.Civ.App.1967). However, it is equally well settled that district courts, the courts of general jurisdiction under Texas law, have jurisdiction over suits involving the validity of claims against the estate. *See, e. g., Carter v. Brady, supra;* *Bryan v. Bryan,* 477 S.W.2d 705 (Tex.Civ.App.1972). Thus, contrary to appellants' assertions, it is evident that the Texas Probate Code contemplates and indeed requires judicial approval at least with respect to those dispositions of property involving the competing interests of adverse claimants.

 As a consequence, we reject appellants' contentions that an independent administrator is precluded from securing court approval of dispositions and, therefore, from complying with the prerequisites of § 6324(a)(1). In any event, it is also clear that the independent system of administration is not the sole method for handling estates under Texas law, and represents a voluntary choice by the testator. In the absence of such a designation by the testator in his will, the estate would be probated under the alternative system established by Texas law, which involves the full participation of the probate court in the approval of claims and ultimate disposition of property. *See* 17A Vernon's Texas Civil Stat.Ann. § 4. Thus, it cannot be argued that the Internal Revenue Code unduly impinges upon the Texas probate system, since Texas law recognizes two methods for administering estates, although only one of them contemplates the type of significant judicial involvement required by § 6324(a)(1). Moreover, the Internal Revenue Code itself provides several alternative means of procuring lien divestiture, although, unlike § 6324(a)(1), those provisions are not self-

executing. For example, § 6325(c) express-ly authorizes the Service to issue an admin-istrative release or partial discharge of the properties, in accordance with certain regu-lations adopted pursuant thereto. *See* 26 C.F.R. § 301.6325–1. Similarly, a prospec-tive purchaser could be assured that the property he received was divested of the estate tax lien, by obtaining a certificate discharging the executor from personal lia-bility for the estate tax, since such a certifi-cate divests the estate tax lien with respect to a "purchaser or holder of a security interest." *See* 26 U.S.C. § 6324(a)(3). In light of the alternatives available to the executor under both Texas law and federal tax law, we are unable to conclude that the requirement that expenditures be approved by a court of competent jurisdiction is an unduly burdensome prerequisite to divesti-ture of the estate tax.

Accordingly, we hold that in the context of the Texas system of independent admin-istration, approval and allowance of a claim by the independent executor does not satis-fy the requirement that the expenditures be "allowed by any court having jurisdiction thereof" within the meaning of § 6324(a)(1); therefore, the properties *sub judice* were not divested of the special es-tate tax lien, and the district court below properly denied appellants' request for in-junctive relief and properly granted appel-lee's motion for summary judgment. Be-cause we hold that the disposition of the property was accomplished without court approval, we need not reach the further issue presented by this appeal, as to wheth-er the proceeds of the sale were used to satisfy "charges against the estate" or "ex-penses of administration" within the mean-ing of § 6324(a)(1).

AFFIRMED.